CLEO WYNIA, APPELLEE, V. CLARENCE HOESING, DOING BUSINESS AS HOESING CONSTRUCTION COMPANY, APPELLANT.

91 N. W. 2d 404

Filed July 18, 1958. No. 34434.

*Frederick M. Deutsch* and *Gordon L. Gay,* for appellant.

*Philip H. Robinson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is a workmen's compensation case from the district court for Cedar County. Cleo Wynia, the widow of Benjamin R. Wynia, originally filed a petition in the Nebraska Workmen's Compensation Court. The case was tried to a judge of the compensation court who found for the claimant and awarded her compensation for the accidental injuries and death suffered by the claimant's husband, Benjamin R. Wynia, and reasonable and necessary expenses incurred and resulting from the accident and death as provided by section 48-122, R. S. Supp., 1955. The defendant thereupon waived rehearing before the compensation court and appealed directly to the district court for Cedar County. Trial was had in the district court, and the trial judge thereof found for the claimant and rendered a judgment in conformity with the judgment rendered by the single judge of the Nebraska Workmen's Compensation Court and, in addition, allowed attorney's fees for claimant's attorney. The defendant filed a motion for a new trial and, from the overruling thereof, perfected this appeal.

There is some contention made with reference to the pleadings of the plaintiff filed in the Nebraska

Workmen's Compensation Court and in the district court as being at a variance, and whether or not certain admissions made in the plaintiff's pleadings constituted a judicial admission or an admission against interest, which need not be determined as will appear later in the opinion.

The defendant assigns as error that the decision of the trial court is not supported by the evidence; that the plaintiff failed to prove that the accident arose out of and in the course of the employment of the deceased; and that the decision of the trial court is contrary to law.

The question for decision in this case is whether the plaintiff has proved by a preponderance of the evidence that the deceased was fatally injured in an accident arising out of and in the course of his employment.

There are certain well-established rules of law relating to the Workmen's Compensation Act applicable to the facts in the instant case.

On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record. The burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment. See McCoy v. Gooch Milling & Elevator Co., 156 Neb. 95, 54 N. W. 2d 373.

A compensable injury within the provisions of the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment. Whether an accident arises out of and in the course of the employment must be determined by the facts of each case. There is no fixed formula by which the question may be resolved. The rule of liberal construction of the Workmen's Compensation Act is related to determination of the scope of the act and does not apply to evidence produced to establish a claim for

compensation. An award under the Workmen's Compensation Act may not be based upon possibilities, probabilities, or conjectural evidence. See Seger v. Keating Implement Co., 157 Neb. 560, 60 N. W. 2d 598.

For convenience we will refer to Benjamin R. Wynia as Wynia or the deceased, to Clarence Hoesing as the defendant, and to Cleo Wynia as the plaintiff.

The record shows that the defendant was engaged in the contracting and construction business and was the sole owner of such business; and that at the time of the accident which resulted in the death of Wynia, the defendant was engaged in the construction of an elementary school at Parker, South Dakota. The defendant's headquarters were in Hartington, Nebraska. Wynia had been employed by the defendant for 3 or 4 years as a job foreman. Wynia and the plaintiff, his wife, resided at Hartington, Nebraska. They had two daughters, one married, and one formerly a college student 19 years of age.

The defendant rented a building which was formerly a filling station in Parker, South Dakota, about a block east of where the school building was being constructed. This building had a large living room and bedroom, a small kitchen, and a half bath on the ground floor. In the kitchen was a gas stove which was rarely, if ever, used. In the basement, which was not a full basement being 16 x 16 or 16 x 12 feet, and having a cement floor, there was a hot water tank and a "side arm" heater which was fed by "L. P." gas. The side arm heater and tank were in the southeast part of the building, almost directly at the foot of the stairs leading to the basement. There was an oil-burning furnace in the basement, which was not used. A tank containing bottle gas was at the side of the building. There was a copper pipe which regulated the pressure from the tank, and the tank could be shut off at the outside of the building. This building was rented for the purpose of furnishing the workmen who lived away from Parker,

South Dakota, a place to sleep. Cots were placed in the building and bedding was furnished by the employer. Bottle gas was also furnished to heat water so the employees who desired to do so could take a shower. The shower was located in the basement. The employees were not required to use the facilities furnished by the defendant. They could lodge elsewhere if they so desired, and had their meals wherever they chose to eat. It was customary for the defendant to furnish these facilities for the men in his employ when they were employed on out-of-town projects, as part of their pay.

A part of the first floor of the building was used for an office. It was equipped with a telephone, and blueprints, specifications, and other records were kept on the first floor. Valuable hand tools were also kept there. No tools and no equipment necessary or incident to the work were kept in the basement. Most of the men who worked on the construction job left about a week prior to the date of the accident, leaving Wynia in charge as foreman, with two employees who lived in Parker, South Dakota. Wynia was the only one who occupied the building, referred to as the "shack," at the time of the accident. Wynia was authorized to and did go to the building as occasion required and when necessary to order material, look over the work sheets, or to obtain tools necessary for use on the job.

There were showers in the school building which were generally used by the men because they were close, and during that time of the year the men had no objection to taking cold showers. Prior to the time the men left Parker, South Dakota, to go to another job, the defendant's brother, a foreman, would light the heater at noon, and on occasions Wynia would light the heater, so that the men could have hot water after working hours in the event they desired to take a shower or wash their face and hands.

On August 3, 1956, between 4 and 4:15 p.m., Wynia left the job. At that time Roy Merrill, an employee, and Wynia had been working on risers in the band room. It was necessary to do some grading and leveling to set the forms for the next riser. In order to be certain that the form was at the right level, a transit was ordinarily used. The transit was kept in the shack unless it was being used on the job. It was always returned to the shack, and was found in the shack after the explosion.

Merrill testified that Wynia left the job to go to the shack for some tools or something. He did not say what he was going for, he just said: "I'm going after something." Merrill further testified that Wynia probably went to the shack for the transit or something like that. If anything in the way of tools was needed from the shack, Wynia went after them. He further testified that he really could not say what Wynia went after as Wynia did not tell him why he was going to the shack, and this witness did not know what he went to the shack for. He further testified that Wynia was coming back to the job, as they were not through working. The working hours were from 7 a.m., to 6 p.m., with an hour off for lunch. He could not think of any tools, supplies, or equipment that were needed on the job at that time. He further testified that he heard an explosion and immediately proceeded to the scene. When he arrived at the shack he saw Wynia standing up, and he and some other men laid him down. He was about 10 feet from the building, on the north side, and was badly burned. This witness went into the building. It did not catch on fire on the inside, but the explosion caused considerable damage to it. He picked up Wynia's belongings and packed them, and left the building. Wynia had been sleeping in the building during the nighttime. The general talk was that Wynia was lighting the side arm heater in the basement when it exploded. The testimony of this witness as to the reason

Wynia went to the shack is purely speculative and conjectural.

Arthur Peterson testified that prior to the explosion he was next door to the shack in a building where his wife operated an ice cream store. The back of this building was probably 8 or 10 feet from the shack and the front of the building about 12 or 14 feet from the shack. The front of the shack had one door on the southwest. He heard the explosion and immediately ran out of the back door of the building, which would put him about 8 feet east of the shack, to see what had happened. He started over to the shack. When he got to the basement window, he noticed a blaze in the basement. He could hear someone calling for help, saying "get help," or some such remark. He called down the basement several times because he thought the party was down there. He thought of going into the building, but was a "bit leery" for fear of another explosion. He probably called three or four times, and then Wynia called, "I'm out here," and he was out of the building, to the north. When Wynia called "I'm out here," this witness looked over and saw Wynia's condition and endeavored from that time on to help him as much as he could. Wynia told this witness to shut off the gas, which he did immediately. The tank was located on the southeast corner of the building. The flame in the basement was in the southeast part, about where the heater was located. He further testified that he did not see Wynia in the basement, and did not see him at all until he was in front of the building when he heard Wynia call "Get some help." He was unable to tell where the sound came from.

Wynia died on August 13, 1956, as a result of being badly burned by the explosion.

The evidence discloses that the deceased went to the shack during working hours. It does not disclose for what purpose he went there. The evidence does not disclose where he was in the shack, what he did in the

shack, or what caused the explosion. He was the only person who slept in the shack who would in any event use the water heater on the date the explosion occurred. It is true that it was within the scope of Wynia's employment to go to the shack during working hours for the purpose of obtaining tools, ordering materials, or to look over specifications and work sheets. However, there is no evidence that such was his purpose when he went to the shack at the time the explosion occurred. The record is as consistent with the theory advanced by the defendant that Wynia went to the shack for the purpose of lighting the heater so that he could take a shower after working hours, as with the theory that he went for tools or purposes connected with his employment.

From an analysis of the evidence, the plaintiff has failed to prove by a preponderance of the evidence that the accident resulting in the injuries and death of Wynia arose out of and in the course of his employment. In addition, in applying the rule established by many cases in this jurisdiction that an award under the Workmen's Compensation Act may not be based upon possibilities, probabilities, or conjectural evidence, we are driven to the conclusion that the judgment rendered by the trial court constituted reversible error.

We reverse the judgment and remand the cause with directions to render judgment for the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.