DARRELL MCDUFFEE, APPELLEE, V. SEILER SURGICAL
COMPANY, INC., A CORPORATION, ET AL., APPELLANTS.
109 N. W. 2d 384

Filed June 2, 1961. No. 34999.

*Luebs, Elson & Tracy, Richard A. Huebner,* and *Irwin
G. Manley,* for appellants.

*Wellensiek & DeBacker,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, SPENCER, and BROWER, JJ.

MESSMORE, J.

This is an appeal from an award in a workmen's compensation case in favor of Darrell McDuffee, brought against Seiler Surgical Company, Inc., a corporation, the employer, and Western Casualty & Surety Company, a

corporation, the compensation carrier, defendants. The plaintiff filed his petition against the defendants in the workmen's compensation court. A judge of said court dismissed the plaintiff's petition on the ground that the plaintiff failed to maintain the burden of proving the injuries he sustained in an accident which occurred on December 19, 1959, arose out of and in the course of his employment by the Seiler Surgical Company. Plaintiff perfected appeal direct to the district court. The district court found generally in favor of the plaintiff and against the defendants; and that the plaintiff suffered injuries caused by an accident arising out of and in the course of his employment. The court fixed the amount of compensation the plaintiff was to receive for injuries sustained by him, and benefits for medical and hospital expenses. Defendants filed a motion for new trial which was overruled. Defendants perfected appeal to this court.

The defendants assign as error that the decision of the trial court is not sustained by the evidence and is contrary to law.

There are certain well-established rules of law pertinent to this case.

"On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record. * * * The burden of proof is upon the claimant in a compensation case to establish by a preponderance of the evidence that personal injury was sustained by the employee by an accident arising out of and in the course of his employment." Miller v. Livestock Buying Co., 157 Neb. 51, 58 N. W. 2d 596.

"A compensable injury within the provisions of the Workmen's Compensation Act is one caused by an accident arising out of and in the course of the employment. * * * Whether an accident arises out of and in the course of the employment must be determined by the facts of each case. There is no fixed formula by which

the question may be resolved." Wynia v. Hoesing, 167 Neb. 136, 91 N. W. 2d 404.

Section 48-151, R. R. S. 1943, provides in part: "(6) Without otherwise affecting either the meaning or the interpretation of the abridged clause, personal injuries arising out of and in the course of employment, it is hereby declared: Not to cover workmen except while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of the injury, and during the hours of service as such workmen, and not to cover workmen who, on their own initiative, leave their line of duty or hours of employment for purposes of their own."

"The term 'arising out of the employment' in the Workmen's Compensation Act covers all risks of accident from causative acts done or occurring within the scope or sphere of the employment. All acts reasonably necessary or incident to the performance of the work, including such matters of personal convenience and comfort, not in conflict with specific instructions, as an employee may normally be expected to indulge in, under the conditions of his work, are regarded as being within the scope or sphere of the employment." Seger v. Keating Implement Co., 157 Neb. 560, 60 N. W. 2d 598.

The plaintiff testified that he was employed by the Seiler Surgical Company on December 19, 1959. His duties required him to call on doctors and hospitals to sell them surgical supplies. On December 19, 1959, he lived in Hastings. His territory was southern Nebraska along Highway No. 30 from the Missouri River west as far as McCook, and included Central City, Fremont, Columbus, Grand Island, and Blair.

His employer's headquarters were in the Medical Arts Building, 111 South Seventeenth Street, Omaha. On occasions he was required to go to the headquarters of the company. The president of the company wanted the plaintiff to be in the store in Omaha on the 1st and

15th of the month, also, when he was going through Omaha or was within that area he was expected to stop at the store.

On Thursday December 17, 1959, he left Hastings and worked accounts in Sutton, York, and Seward, and then went to Fremont where he spent the night with his mother. On Friday morning, December 18, 1959, he called on accounts in Fremont, Wahoo, and Yutan, and then drove into Omaha to the store. He arrived at the store at about 2 or 2:30 p.m. He had some orders from doctors which he wrote up and left at the store. He obtained a purchase order from the store, and went to McKesson's store to pick up a gift, which was his personal business. He then drove back to Fremont and stayed overnight at his mother's home. On Saturday morning, December 19, 1959, he left Fremont, drove to the store in Omaha where he checked his mail file, waited on customers, talked to the president about the company selling its business and about his car allowance, and made out an expense voucher for the week. He also picked up some items to deliver to customers, to save the customers freight bills. On Saturday afternoon, he went to Fremont, arriving there about 4 p.m., or a little later. His personal things were at his mother's home in Fremont. He remembered that he did not have a spare tire. There was a service station 2 blocks from his mother's home, so he drove his car to the service station and purchased a used tire. He was unable to get the tire mounted at that time, and went back and stayed with his mother for awhile then returned to the service station to pick up his used tire. He testified that this occurred a little after 6, or more likely 6:30 p.m. He then started west on U. S. Highway 30. When he arrived at Columbus he stopped for coffee, then went to Central City. When he arrived at Central City he was tired, and stopped at a service station and had another cup of coffee. He left Central City, and when he was approximately 3½ miles east of Grand Island an accident

occurred between his car and a semi-truck. This accident happened about 10:30 p.m.

On cross-examination the plaintiff testified that on Friday he was in the McKesson store in Omaha around 3:30 p.m., and drove directly to Fremont and spent the night with his mother; that after he left the store about 1 p.m., on Saturday, he had nothing further to do for his employer; and that he had only to return home from Omaha when he left the store. He further testified on cross-examination that he had not intended to perform any duties for his employer in Fremont Saturday afternoon; that he did not make any solicitations or calls on any customers from the time he left Omaha until after the accident occurred; that he made no attempt to contact customers on Saturday afternoon, December 19, 1959; that his usual hours of service were Monday through Friday, and occasionally on Saturday morning; and that if he did not go in to the store he would call on customers in Hastings and generally finish around noon or the early afternoon. He further testified on cross-examination that one of the reasons for going back to Fremont was to see and visit with his aunt, and to get some eggs which his mother was furnishing him; that his regular work week was 5 days, Monday through Friday; and that he had not intended to deliver the table paper or acetone, which he had picked up for the use of certain of his customers, until the next Monday.

The Workmen's Compensation Act extends to and covers only workmen while engaged in, on or about the premises where their duties are being performed, or where their service requires their presence as a part of such service at the time of injury, and during the hours of service as such workmen. See, § 48-151 (6), R. R. S. 1943; Pappas v. Yant Constr. Co., 121 Neb. 766, 238 N. W. 531; Hall v. Austin Western Road Machinery Co., 125 Neb. 390, 250 N. W. 258; Luke v. St. Paul Mercury Indemnity Co., 140 Neb. 557, 300 N. W. 577.

Considering the wording of the statute and the deci-

sions relating thereto, together with the facts in the instant case, we conclude that the plaintiff was not at the time of his injury engaged in, on or about the premises where his duties were being performed. He was not at any place where his service to his employer required his presence as a part of such service. The accident did not occur during any time when his service was required. The plaintiff had clearly left his employment and gone to a place where his duties did not require his presence. His departure was in no sense incidental to his employment.

It is well settled by the decisions of this court that, where an employee leaves the place where his duties are to be performed or where his service requires his presence to engage in a personal objective, not incidental to his employment, the relation of employer and employee does not exist until he returns to a place where by the terms of his employment he is required to perform service. See Luke v. St. Paul Mercury Indemnity Co., *supra,* and cases cited therein.

The judgment is reversed and the cause remanded with directions to dismiss the petition of the plaintiff, and to render judgment in favor of the defendants, the claim of the plaintiff not being compensable under the Workmen's Compensation Act.

REVERSED AND REMANDED WITH DIRECTIONS.