THOMAS GIBB, JR., APPELLEE, V. HIGHWAY G.M.C. SALES & SERVICE CORPORATION ET AL., APPELLANTS.
132 N. W. 2d 297

Filed December 31, 1964. No. 35903.

Frederick M. Deutsch, William I. Hagen, and James P. Monen, for appellants.

McCormack, McCormack & Brown and Jewell & Otte, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

CARTER, J.

This is a claim for compensation under the provisions of the Nebraska Workmen's Compensation Act. The case was tried on appeal from the decision of a single judge of the Nebraska Workmen's Compensation Court by the district court for Knox County. The district court found for the claimant and the defendants have appealed.

Claimant was employed by the Highway G.M.C. Sales & Service Corporation of Grand Island, Nebraska, which we shall designate as the employer. The employer was engaged in the business of selling new and used trucks and trailers, parts, and service. Claimant was employed as sales manager for the employer and had three salesmen under his supervision. The employer was not territorially restricted in its operations, nor were the salesmen restricted to specified areas in the performance of their duties. The assigned hours of the sales manager and salesmen were from 8 a.m. to 6 p.m., but they were expected to be available at all hours in the performance of the employer's business, when necessary. They were authorized to travel in the performance of their duties and vehicles were provided by the employer for this purpose. Traveling expenses were paid to these employees, including a limited amount for the entertainment of prospective customers.

On February 15, 1962, claimant and Joe Murphy, one of the salesmen, went to Creighton, Nebraska, pursuant to an appointment made by telephone by Murphy, in an attempt to close a trade of a new truck for a used one

with Merle Waldow, a truck operator. They drove a Suburban truck, a vehicle somewhat similar to a station wagon, which belonged to the employer. They left at midafternoon and were prepared to remain in Creighton overnight.

They arrived in Creighton about 5 p.m., and went to the Dawson Oil Station where they met Waldow pursuant to their appointment. They talked with Waldow and inspected the truck-trailer which Waldow proposed to trade. Some discussion was had with Danny Dawson, who operated a gasoline transport in addition to operating the oil station, concerning a trade. At or near 6 p.m., it was agreed that the negotiations would continue the next day.

Claimant and Murphy remained at the oil station until it closed at or near 7:30 p.m. They then went to Jerry's Bar in company with Fred Smith, the oil station attendant. The evidence is in conflict as to whether or not Waldow and Dawson accompanied them to the bar. Claimant and Murphy drank 2 or 3 tomato beers. During their stay in the bar, Smith was told that claimant and Murphy had no lodging for the night. Smith went to the only hotel in Creighton and was told that no rooms were available but that lodging in a private home could be provided. This was reported to Murphy in the presence of claimant, to which Murphy replied that they did not want to stay in a private home, which information Smith reported back to the hotel.

During their stay at Jerry's Bar it was suggested they get something to eat. Smith informed them that a "mountain oyster" feed was being staged at a bar in Brunswick. They decided to go to Brunswick. Smith went home, changed clothes, and met claimant and Murphy at the Dawson Oil Station. They proceeded to Brunswick in two vehicles, Murphy riding with Smith and claimant following in the Suburban. They proceeded 7 miles west of Creighton on Highway 59, then south 8 miles on Highway 14, then east 3 miles on High-

way 20 to the Brunswick Spur, and then 1 mile south into Brunswick.

It should be noted here that it was 9 miles east from the north end of the Brunswick Spur on Highway 20 to Plainview. The evidence shows that there had been talk in the bar at Creighton that claimant and Murphy would go to Plainview to obtain lodging for the night.

On arrival in Brunswick at 9:30 or 10 o'clock p.m., they went to the bar recommended by Smith where they drank 3 or 4 bottles of beer and ate 2 or 3 sandwiches. The place was crowded with men, women, and children. While there, claimant found a farmer and his wife who were old friends of his. They informed claimant that if he did not find lodging in Creighton, claimant and Murphy were welcome to stay at their farm home. The invitation was not accepted.

At or near 11 o'clock claimant and Murphy decided to leave. Claimant testified that Smith left with them and that they returned to Creighton over the same route they took in going to Brunswick, with Murphy riding with Smith and he following in the Suburban. Smith testified that claimant and Murphy left before he did and that he did not see them again that night. Claimant testified that on arrival back in Creighton Murphy inquired at the hotel about lodging, that he heard parts of the conversation, and that no rooms were available. This was disputed by the hotel operators who testified that no one inquired about rooms on that night. Claimant testified that he parked in front of the hotel and that Smith also parked and let Murphy out of his car.

Claimant testified that he and Murphy got in the Suburban to go to Plainview to obtain lodging for the night. He said that Murphy was driving and that he settled back in the right-front seat with his hat over his eyes, and relaxed. Claimant testified that he remembered nothing until he came to, in a field about 2 miles south of Creighton, where the Suburban was overturned and wrecked. The accident occurred at or near a cor-

rection line turn on Highway 13. There is some evidence in the record, although fragmentary, that after the accident Murphy was in the field and claimant in the car, indicating that claimant was the driver. As a result of the accident Murphy suffered fatal injuries and claimant suffered serious injuries.

It is on this state of facts that plaintiff contends that the accident arose out of and in the course of the employment. The defendants assert that the accident occurred during a deviation from the employment for which defendants are not chargeable.

The relationship of employer and employee is not questioned. It is not questioned that claimant's earnings were such as to warrant the maximum compensation rate if liability attaches. It is not contended that claimant or Murphy were intoxicated. The sole issue is whether or not claimant and Murphy were outside the scope of their employment because of a deviation therefrom.

We think the evidence shows conclusively that claimant and Murphy deviated from their employment from the time they left the Dawson Oil Company station at 7:30 p.m. until they returned to Creighton around midnight. During this period they were engaged in purposes of their own and were in no way acting within the scope of their employment. The issue in the case is whether or not they had returned to a place where their employment required them to be, and were within the scope of their employment when they left Creighton for Plainview to obtain lodging for the night, during the course of which trip the accident occurred.

It is the contention of the claimant that their deviation from the employment ended when they returned to Creighton around midnight and that they had in legal effect resumed their employment when they proceeded from Creighton to Plainview to obtain lodging for the night. It is the contention of defendants that before they went to Brunswick they had determined to spend

the night at Plainview, that two vehicles were taken so that Smith could return to Creighton and they could proceed to Plainview, that no reason existed for their return to Creighton, and that, in not proceeding on a direct route from Brunswick to Plainview, they were still engaged in purposes of their own in returning to Creighton and proceeding to Plainview by so circuitous a route.

The general rule applicable to such situations is: When an employee leaves a place where his duties are to be performed or where his service to his employer requires his presence, to engage in other objectives not incident to the employment, the relation of employee and employer within the meaning of the compensation act does not exist until he returns to a place where by the terms of his employment he is required to perform services. Luke v. St. Paul Mercury Indemnity Co., 140 Neb. 557, 300 N. W. 577; McNaught v. Standard Oil Co., 128 Neb. 517, 259 N. W. 517.

It is not contended here that claimant and Murphy, after discovering that lodging was not available in Creighton, were outside the scope of their employment in proceeding to Plainview to obtain lodging accommodations. Defendants contend that it is the route they took which prevents a finding that they had returned to their employment upon their return to Creighton at midnight a few minutes before the accident.

The evidence shows that it is 19 miles from Creighton to Brunswick on the route they used in going from and returning to Creighton. A shorter route of 13 miles, over hard-surfaced roads, could have been taken. No reason was shown why they chose the longer route. The fact that they traveled the longer route in going to and returning from Brunswick does not of itself appear important. Defendants contend that as they could have proceeded to Plainview by going 9 miles east from the Brunswick Spur on Highway 20, they were deviating from the employment when they traveled the 19 miles to

Creighton and commenced their 13 mile trip to Plainview from Creighton. The accident occurred about 2 miles south of Creighton on the most direct and best road from Creighton to Plainview. It is not questioned that, but for the deviation, claimant and Murphy would have traveled from Creighton to Plainview to obtain accommodations for the night.

It is the general rule that a commercial traveler is regarded as acting in the course of his employment during the entire period of travel on the employer's business and his acts in procuring food and shelter are ordinarily considered as incidents of the employment. When the employee deviates from the employment for his own purposes, he is still regarded as being in the accomplishment of his own purposes, even though engaged in returning to his employment, until he has returned either to the point of his deviation from the path of duty or to a point where he is required to be in the performance of duty. The reasons for a deviation are not of controlling importance. The important question is whether or not there has been a return to the employment under the foregoing rule. 7 Schneider, Workmen's Compensation Text (Perm. Ed.), § 1684, p. 403.

In the instant case the claimant deviated from his employment at Creighton. When he returned to Creighton and proceeded to Plainview to obtain lodging, he was back in the scope of his employment. He had returned to his employment at the point of deviation, the most acceptable point for reentering the scope of the employment. Since it was necessary to obtain lodging at a point other than Creighton, it is not of controlling importance whether the deviation ended at 6 or 9:30 p.m., or 12 midnight. It was a movement that was incident to the employment and must be treated as a return to the service of the employer. The accident having occurred while the claimant was in the service of the employer, more accurately in the performance of an incident to the employment, it is compensable under the

Nebraska Workmen's Compensation Act. The fact that claimant, during the period of his deviation, may have reached a place nearer the point to be reached is not a material factor.

Defendants cite a number of cases from other jurisdictions holding that liability does not attach where, after a deviation, the employee is returning to his employment. The cases are distinguishable from the present case. If the accident in the case at bar had occurred while claimant was returning to his employment, to wit, between Brunswick and Creighton, we quite agree that liability would not attach. But in the instant case the claimant had returned to the point of deviation and was performing an incident to his employment which, except for the deviation, he would have performed at an earlier time. Under such circumstances he had reentered his employment and was not merely on his way to reenter it.

We conclude that claimant suffered an accident arising out of and in the course of his employment and is entitled to the benefits of the Nebraska Workmen's Compensation Act. The trial court arrived at this conclusion and its judgment is affirmed.

AFFIRMED.