REQUESTED BY: William F. Abell, Department of Agriculture.
What is the scope of Workmen's Compensation coverage in the area of marketing division employees on a trade mission or trip out of town (or out of the county)?
When an employee is traveling away from home, at the expense of his employer, he will generally be compensated for any injuries which occur because of activities within the scope of his employment. Whether specific activities are considered to be within the scope of employment or purely personal activities is determined by what a reasonably prudent person might comprehend as incidental to the employment when he accepted the position. When an employee is traveling away from home, the reasonableness of his activities is generally given a very liberal construction. However, as the activity of the employee becomes less and less reasonable in relation to the scope of his employment, the probability for compensation for injury also lessens comparatively.
The scope of Workmen's Compensation coverage on traveling employees is generally broader than the scope of coverage on a non-traveling employee. Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct deviation on personal errands is shown. Larson,Workmen's Compensation, section 25, page 5-200. Under the modern trend of decisions, as accident occurs in the course of one's employment when it takes place within the time period of the employment, at a place where the employee may reasonably be and while he is fulfilling the duties of his employment, or is engaged in some activity incidental to that employment. An activity is incidental to the employment if it carries out the employer's purposes or advances his interests directly or indirectly. Larson, Workmen'sCompensation, section 20, page 1-5.
The Nebraska Supreme Court has stated:
 ". . . `Ordinarily a commercial traveler is regarded as acting in the course of his employment during the entire period of travel on the employer's business, and his acts in procuring food and shelter are considered, ordinarily, to be incidents of his employment. * * * Where an employee deviates from the scope of his employment for purposes of his own, he is regarded as being outside the scope of his employment until he has returned either to the point of deviation from the path of duty, or to a point where in the performance of duty he is required to be. * * * Where an employee has returned to the point of deviation and engages in the duties of his employment, or engages in acts reasonably incidental to his employment, which, but for the deviation, would have been performed, although at an earlier time, he is within his employment and the coverage of the Workmen's Compensation Act.'" Murphy v. Hi-Way G.M.C. Sales Service Corp., 178 Neb. 397, 133 N.W.2d 595 (1965).
See also the companion case of Gibb v. Highway G.M.C. Sales Service Corp., 178 Neb. 127, 132 N.W.2d 297.
Other situations which have been held compensable by various courts include injuries resulting from fires in the hotel in which the employee was staying and from accidents on the way to or from meals while on the trip.
It is impossible to set forth a list of compensable and noncompensable situations for a traveling employee. The application on the Workmen's Compensation Law must be made on a case-by-case basis considering all relevant facts and taking into account the employee's duties, the extent and purpose of his trip, and what has been customary in similar trips for the employer. However, the general rules set forth above should be helpful in anticipating future situations.
The Nebraska Constitution contains the following pertinent provision at Article II, section 1:
 "The powers of the government of this state are divided into three distinct departments, the Legislative, Executive and Judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."
Our Supreme Court in Gillette Dairy, Inc. v. NebraskaDairy Products Board, 192 Neb. 89, 219 N.W.2d 214 (1974), in holding that the Dairy Industry Trade Products Act was unconstitutional, stated:
 "It is fundamental that the Legislature may not delegate legislative authority to an administrative or executive authority. It does, however, have power to authorize an administrative or executive department to make rules and regulations to carry out an express legislative purpose or for the complete operation and enforcement of a law within designated limitations. It is fundamental, however, that in the legislative grant of power to an administrative agency, such power must be limited to the express legislative purpose and administered in accordance with standards described in the legislative act. . . ." Id. at 100.
In quoting from Lincoln Dairy Co. v. Finigan,170 Neb. 777, 104 N.W.2d 227 (1960), the court stated:
 ". . . In that case we held: `The limitations of the power granted and the standards by which the granted powers are to be administered must, however, be clearly and definitely stated. They may not rest on indefinite, obscure, or vague generalities, or upon extrinsic evidence not readily available.'" Id. at 100.
This principle has been further recognized by our Supreme Court in University Police Officials Union v. Universityof Nebraska, 203 Neb. 4, 277 N.W.2d 529 (1979).
A statute providing for the enactment of regulations must provide designated limitations. This may be provided in the legislative history as well as in the standards clearly and definitely stated in the act. The language contained in LB 171 is not clearly and definitely stated. The purpose is vague and indefinite. There is no definite standard by which the regulations are to be issued and administered.
The board is to adopt standards with only the limitation that they be reasonable and cost effective. No other guidelines or limitations are provided. The act does refer to seven separate standards which the board may or may not adopt in total or in part, however these offer very little guidance.
It is our conclusion, that the language contained in LB 171 is so general, vague and indefinite that it fails to place adequate limitations on the board's power to enact regulations. It would, therefore, be an unconstitutional delegation of legislative power to the executive in violation of the Nebraska Constitution, Article II, section 1.