ELLIS W. JACOBS, APPELLEE, V. CONSOLIDATED TELEPHONE COMPANY, DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEE.

467 N.W.2d 864

Filed April 5, 1991.   No. 90-410.

Walter E. Zink II, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Roger G. Steele, of Luebs, Beltzer, Leininger, Smith & Busick, for appellee Jacobs.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Consolidated Telephone Company (Consolidated) appeals from an award by the Nebraska Workers' Compensation Court on rehearing in favor of plaintiff, Ellis W. Jacobs, for injuries he received in an automobile accident. The single error Consolidated assigns is that the workers' compensation court erred on rehearing when it found that the plaintiff's injuries "were sustained in an accident occurring within the course and scope of the plaintiff's employment with the defendant." We affirm.

The record shows that plaintiff had been employed by Consolidated since 1962. Consolidated was engaged in the telephone communications business in the west central part of Nebraska. At the time of the accident in this case, plaintiff was employed as Consolidated's superintendent of construction and maintenance and was generally in charge of Consolidated's business in the area. He lived in Mullen, Nebraska. Sometime in early August 1988, plaintiff had several telephone conversations with Charles Fast, an officer of Consolidated, and with Clifford Thompson, secretary of Consolidated. Both men worked in Lincoln, Nebraska, where Consolidated's corporate offices were located. The conversations concerned the need for a business meeting between the parties to discuss several business matters, including plaintiff's pending retirement, personnel problems concerning the transfer of an employee working in plaintiff's area, the purchase of a new truck, and establishing a cellular phone system in Kansas. Plaintiff and Consolidated officers agreed that a meeting would be held at Consolidated's headquarters in Lincoln sometime over the 1988 Labor Day weekend.

On Thursday, September 1, 1988, plaintiff and his wife left their home in Mullen and traveled on Highway 2 to Grand Island, then on U.S. Highway 281 south to Interstate 80, and on the Interstate to their daughter's home in Lincoln. They arrived in Lincoln on Thursday evening, and plaintiff telephoned Clifford Thompson to arrange a specific time for the meeting.

By agreement, the meeting was scheduled for Monday morning, September 5, 1988.

The day after he arrived, plaintiff saw his doctor, pursuant to an appointment plaintiff made after he knew he was coming to Lincoln on business, went to the Bureau of Vital Statistics to obtain a copy of his wife's birth certificate, and went to the Social Security office. On Saturday, plaintiff went to the State Fairgrounds, and on Sunday, he attended a tractor pull at the Nebraska State Fair. The tickets to the tractor pull were given to plaintiff as a birthday gift from his daughter after she learned plaintiff planned to be in Lincoln on business. Clifford Thompson testified that plaintiff met with him at Thompson's home on Sunday and discussed business for approximately 2 hours.

On Monday, the previously scheduled business meeting took place at Consolidated's offices. Plaintiff, Clifford Thompson, and Gilbert Scott Thompson, president of Consolidated, were at the meeting. Charles Fast was in the offices during the meeting. Testimony showed that the group discussed possible incentives plaintiff could offer a Consolidated employee who was under plaintiff's direction to aid in the employee's move from one location to another; the fact that the company truck used for transporting a "cable [plow] was not adequate for, or safe for the job"; the installation of fiber-optic cable; and plaintiff's upcoming retirement. The meeting lasted from approximately 8 a.m. until 1 or 2 p.m.

Plaintiff and his wife left for the return trip to Mullen early Tuesday morning, September 6, 1988, retracing the same route that brought them to Lincoln. While passing through Grand Island, plaintiff was injured in an automobile accident.

Factual findings made by the workers' compensation court have the same force and effect as a jury verdict and will not be set aside on appeal unless clearly erroneous. *Way v. Hendricks Sodding & Landscaping, Inc.*, 236 Neb. 519, 462 N.W.2d 99 (1990).

A workers' compensation claimant must prove by a preponderance of the evidence that his claimed disability was caused by an accident arising out of and in the course of his employment. *Id.* Whether an activity arises out of and in the

course of employment is a factual determination and, as such, may not be reversed unless clearly wrong. *Reynolds v. School Dist. of Omaha*, 236 Neb. 508, 461 N.W.2d 758 (1990).

The workers' compensation court found that "while engaged in the duties of his employment [plaintiff] suffered injuries . . . as a result of an accident arising out of and in the course of his employment by the said defendant . . . ." Consolidated disagrees and contends that plaintiff was not within the course and scope of his employment when the accident happened, since plaintiff "would have traveled to Lincoln for personal reasons even if no work-related activities were intended . . . ." Brief for appellant at 4. The record does not support this contention.

Under the dual purpose rule, as set out in *Matter of Marks v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929), if an employee is injured in an accident while on a trip which serves both a business and a personal purpose, the injuries are compensable as arising out of the course and scope of employment provided the trip involves some service to be performed on the employer's behalf which would have occasioned the trip, even if it had not coincided with the personal journey. See 1 A. Larson, The Law of Workmen's Compensation § 18.00 (1990).

The definitive case on the dual purpose doctrine is *Matter of Marks v. Gray, supra*. In that case, Justice Cardozo, writing for the New York Court of Appeals, sets out what has become the test in a majority of jurisdictions for determining when a trip which has both business and pleasure purposes can reasonably be said to be "within the course and scope of employment" for workers' compensation law purposes. The test as set forth by Cardozo and most often quoted is this:

> If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own . . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk.

*Id*. at 93-94, 167 N.E. at 183.

The *Marks* test is essentially a commonsense test. If an employee has plans to travel to a certain location and his employer asks him to drop something off on the way, business has not occasioned the trip, because the employee was going that way anyway. If the employer asks his employee to travel to the Bahamas for a business conference and the employee then decides to make the trip a vacation as well, it is still business which occasioned the trip. See 1 A. Larson, *supra*, § 18.13.

The *Marks* test has been adopted by a majority of jurisdictions but has never been formally adopted in Nebraska. Nebraska cases involving a "dual purpose" issue have stated the test in terms of the "major factor" or "primary purpose" of the trip. This approach has been widely criticized in that it requires the compensation court to determine the relative weight of personal versus business errands to determine which is "dominant." See 1 A. Larson, *supra*, § 18.13. The rule as set out in *Matter of Marks, supra*, makes clear that we need not engage in a weighing of errands performed after arrival at the destination to determine whether a trip is in the course of employment. It is clear that the *Marks* opinion, read as a whole, places the focus on what occasioned the trip in the first place. We adopt the rule in *Marks* as the rule in Nebraska. Cardozo correctly states that the concern is whether the risks of travel are also the risks of employment, and in that light, "the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils." *Matter of Marks, supra* at 93, 167 N.E. at 182.

Under *Marks*, what plaintiff did with his spare time is largely irrelevant if his work either created the necessity for travel or was a concurrent cause of the trip. Business need not have been the "major factor" in inducing this particular trip if the trip would have been made at some time to accomplish the business.

This is not to say that the court may disregard the events which occurred on arrival, since the relative insignificance of the business errand may be an indicator of whether it would have occasioned the trip. However, we need not weigh the various activities in which plaintiff was engaged after he arrived in Lincoln. The only relevance plaintiff's spare-time activities

might have had would be to show that the business errand was not sufficiently urgent in itself to motivate the trip and, hence, could not have "created the necessity" or been a concurrent cause of the trip because the business task could have been accomplished another way or need not have been accomplished at all. The trip is a business trip if the service to be performed for the employer required the journey to be made, even if it had not coincided with the employee's personal journey. See 1 A. Larson, The Law of Workmen's Compensation §§ 18.12 to 18.14 (1990).

The facts show that the trip to Lincoln in this case was predicated on business for Consolidated. It is clear from the record in this case that plaintiff's work "created the necessity for the trip" to Lincoln and that his personal activities while in Lincoln were, at most, a concurrent cause of the trip. The facts in the record show that plaintiff's employer asked him to come to Lincoln. There is no proof that plaintiff would have made the trip had it not been for the meeting, and there is clear evidence that had his personal business been canceled, plaintiff still would have made the trip to Lincoln for the business meeting, either on the same weekend or at some point in the near future. Clearly, the Consolidated executives managing the business required plaintiff's presence in Lincoln for business reasons.

The testimony of Clifford Thompson is most persuasive on this issue. Clifford Thompson testified that he "asked [plaintiff] to come to Lincoln, so that we could look at pictures, draw diagrams, interact personally rather than over the phone," and that he asked plaintiff "when he would be in [the] general vicinity so [they] could have some time to talk." He further stated that plaintiff "might have suggested the Labor Day or state fair time frame as a time that he could get off and could be available." Because Clifford Thompson "was going to be in the area" at this time, they decided to meet sometime over the Labor Day weekend. He further stated that this meeting would have to have occurred at some point. These facts indicate that plaintiff made the trip to Lincoln at the behest of his employer at a time that happened to be mutually convenient and that if the trip had not been made at this time, it would have

been made eventually.

Plaintiff's testimony bolsters the showing that work created the necessity for travel to Lincoln. He stated that he made the appointment with his doctor after he knew he was coming to Lincoln and that he received tickets to the state fair tractor pull from his daughter sometime after his birthday, August 19, because she "knew [he] was coming to Lincoln for a business meeting." Consolidated tries to make an issue out of the fact that plaintiff knew of these personal plans before he left home. Under *Matter of Marks v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929), this is irrelevant, since plaintiff's work created the necessity for travel, and none of his personal plans were made until after he knew he was to attend a business meeting at defendant's headquarters in Lincoln. Plaintiff further testified that he would not have traveled to Lincoln to do his personal errands over the Labor Day weekend had there not been a meeting scheduled. This indicates that at most, plaintiff's personal plans were a concurrent cause of the trip.

Finally, plaintiff traveled back toward Mullen using the same route on which he had come. While plaintiff did plan to stop in Grand Island with the intention of looking at trucks for his employer, as well as to run a personal errand, this cannot be characterized as a wide departure from the route whereon his employer's business was to be conducted. In fact, Clifford Thompson testified that plaintiff was to look several places for new equipment and that Grand Island was one of the sources.

It is clear from the record that although the Workers' Compensation Court on rehearing used the language of the "major factor" test, it used the reasoning of the *Marks* test and did not err in finding that plaintiff was within the course and scope of his employment at the time of the accident. Plaintiff is awarded the sum of $2,000 to be paid by Consolidated to apply toward the fee for the services of his attorney in this court.

AFFIRMED.