KAREN J. KRAUS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOSEPH FELIX KRAUS, DECEASED, AND PERSONALLY AND AS GUARDIAN AND NEXT FRIEND OF NICHOLAS JOSEPH KRAUS ET AL., APPELLEE AND CROSS-APPELLANT, V. JONES AUTOMOTIVE, INC., APPELLANT AND CROSS-APPELLEE.

529 N.W.2d 108

Filed March 21, 1995. No. A-94-602.

Mark J. Peterson, of Erickson & Sederstrom, P.C., for appellant.

James F. Kasher and Robert S. Lannin, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellee.

IRWIN and MILLER-LERMAN, Judges, and MORAN, District Judge, Retired.

IRWIN, Judge.

Jones Automotive, Inc., appeals from a decision of the Workers' Compensation Court review panel affirming an award of benefits to the widow and minor children of Joseph Felix Kraus, who died in an automobile accident on February 1, 1993. Jones Automotive claims that the review panel erred in affirming the trial court's determination that Kraus was within the course and scope of his employment when the accident occurred. For the reasons discussed below, we affirm.

FACTUAL BACKGROUND

Joseph Felix Kraus was the president of Jones Automotive,

Inc., an automotive parts wholesaler located in Omaha, Nebraska. As president, Kraus' duties included servicing distributors of Jones Automotive's parts and traveling to the distributors' places of business to inventory their stock and solicit orders for parts. On February 1, 1993, Kraus had plans to travel to North Platte, Nebraska, to meet with distributors that sold products for Jones Automotive. Upon arriving at Jones Automotive that morning, he discovered that the van he had planned to drive to North Platte was inoperable. He then changed his plans, deciding to take a different, company-owned vehicle to Lincoln, Nebraska; meet with Jones Automotive's largest distributor; and then travel to Grand Island, Nebraska, to pick up his mother's car and drive it to Omaha for repairs.

Kraus left Omaha and drove to Lincoln, which is approximately 60 miles southwest of Omaha. The trial court's written order does not contain a finding determining Kraus' route from Omaha to Lincoln. No witness had firsthand knowledge of what route Kraus took from Omaha to Lincoln. In Lincoln, Kraus met with the owner of Progressive Automotive, Daniel Hicks, for approximately 2 hours. While at Progressive Automotive, Kraus went over price sheets with Hicks and did a brief check of Progressive Automotive's inventory. Kraus told Hicks of his plans to travel on to Grand Island and also stated that because he was having car troubles, he was considering driving directly back to Omaha.

When Kraus left Lincoln, testimony revealed, he traveled west on Highway 34 toward Grand Island. When Kraus reached Aurora, Nebraska, which is approximately 75 miles west of Lincoln and approximately 20 miles east of Grand Island, he phoned his brother, Thomas Kraus, who was the parts manager at Jones Automotive. Kraus told Thomas Kraus that he was having car troubles and that he was going to travel north to Highway 92, then east to Omaha. At approximately 8:15 p.m., Kraus died in a one-car accident near the intersection of Highways 275 and 92, just outside of Omaha.

On June 8, 1993, Kraus' widow, Karen J. Kraus, filed a petition in the Workers' Compensation Court, alleging that Kraus died within the course and scope of his employment, and

seeking to recover benefits under the Workers' Compensation Act. See Neb. Rev. Stat. § 48-122 (Reissue 1993). Jones Automotive's answer generally denied the allegations in the petition. A hearing was held on December 7, 1993, and on January 10, 1994, the trial judge issued an award to Kraus' widow and minor children.

In its award, the trial judge found that Kraus' trip to Lincoln and toward Grand Island served a legitimate business purpose and that Kraus was therefore in the course and scope of his employment when he died. The award listed three different bases for its conclusion. The trial judge reasoned that the trip to Grand Island had a legitimate business purpose because Kraus' mother was a stockholder, former creditor, and employee of Jones Automotive. The trial judge went on to hold that, even if the trip from Lincoln toward Grand Island had been personal, Kraus would have completed this personal deviation and returned to his regular route, and thus returned to being within the course of employment, when the accident occurred. Finally, the trial court found that liability would also have attached to Jones Automotive because the vehicle which Kraus had been driving at the time of the accident belonged to Jones Automotive.

On review, the compensation court review panel affirmed. The review panel found that the trial judge's finding that Kraus' trip to Lincoln was for business purposes was not clearly wrong. The review panel went on to hold that the trial judge was not clearly wrong in finding that any personal deviation had ended prior to the accident and that at the time of the accident, Kraus was returning from Progressive Automotive and was in the course of his employment. The review panel did not address the trial judge's finding that Kraus was in the course of his employment because he was driving a vehicle owned by Jones Automotive at the time of the accident. Jones Automotive thereafter appealed to this court, and Karen Kraus filed a cross-appeal relating to the question of whether a penalty should be imposed on Jones Automotive as provided by the Workers' Compensation Act.

ASSIGNMENTS OF ERROR

Jones Automotive has assigned eight errors on this appeal, which we have consolidated into four assigned errors for purposes of discussion. Jones Automotive claims that the review panel erred in affirming the trial judge's determination that (1) Kraus' trip was in the course and scope of his employment under the dual purpose doctrine; (2) Kraus' accident did not occur during a personal deviation from his employment; (3) Kraus' death was compensable under the Workers' Compensation Act because he was driving a vehicle owned by Jones Automotive; and (4) Kraus' widow and dependent children were entitled to benefits, including remarriage benefits and burial expenses.

In her cross-appeal, Kraus' widow alleges that the review panel erred in failing to address and award a 50-percent penalty to her and her dependent children, as provided under the Workers' Compensation Act where the employer is delinquent in paying compensation in the absence of a reasonable controversy.

STANDARD OF REVIEW

Findings of fact made by the Workers' Compensation Court trial judge are not to be disturbed upon appeal to the review panel unless they are clearly wrong, and if the record contains evidence which substantiates the factual conclusions reached by the trial judge, the review panel should not substitute its view of the facts for that of the trial judge. It naturally follows that the Court of Appeals does not substitute its view of the facts for that of the trial judge. See *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994). When testing the sufficiency of the evidence to support findings of fact by the Workers' Compensation Court trial judge, the evidence must be considered in the light most favorable to the successful party, and the successful party will have the benefit of every inference reasonably deducible from the evidence. See *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. *McGowan v.*

*Lockwood Corp.*, 245 Neb. 138, 511 N.W.2d 118 (1994).

## DISCUSSION

*Dual Purpose Doctrine.*

■ There is no dispute that Kraus performed business functions in Lincoln on February 1, 1993, and that his journey from Omaha to Lincoln on that date was for business purposes. Also, for purposes of this opinion, we will assume, without deciding, that Kraus' reasons for traveling from Lincoln to Aurora on the date of his accident were purely personal. We assume this because a determination that Kraus' death is compensable despite a personal journey to Aurora will render it unnecessary to review the trial judge's determination that such journey was business related. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994)(holding that an appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it). We therefore assume that Kraus' trip on February 1, 1993, had both a business and a personal element. When an employee is injured on a trip that has both a business and a personal element, the first step in determining compensability is to determine whether the trip, *as a whole*, was taken for business or for personal reasons. See 1 Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 19.10 (1994).

■ A device for determining whether an employee's entire trip was business or personal was developed by Justice Cardozo in *Matter of Marks v. Gray*, 251 N.Y. 90, 167 N.E. 181 (1929). That device has become commonly known as the dual purpose doctrine. The dual purpose doctrine was adopted by the Nebraska Supreme Court in *Jacobs v. Consolidated Tel. Co.*, 237 Neb. 772, 775, 467 N.W.2d 864, 866-67 (1991), where the court explained the doctrine, stating:

> [I]f an employee is injured in an accident while on a trip which serves both a business and a personal purpose, the injuries are compensable as arising out of the course and scope of employment provided the trip involves some service to be performed on the employer's behalf which would have occasioned the trip, even if it had not coincided with the personal journey. . . .

> . . . "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own . . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

(Quoting *Matter of Marks, supra.*)

In the present case, the trial court concluded that, under the dual purpose doctrine, Kraus' trip was a business trip. Jones Automotive claims that this finding was error, because Kraus had no business purpose in traveling from Lincoln toward Grand Island. Jones Automotive claims that "[f]or the [dual purpose] doctrine to apply, the primary purpose of the trip must be for business purposes, and the personal part must take place at the business destination." Brief for appellant at 17. These claims lack merit. First, Jones Automotive cites no authority for its assertion that the personal purpose must take place "at the business destination" in order for the dual purpose doctrine to apply, nor are we aware of any. Second, the "primary purpose" approach that Jones Automotive espouses was explicitly rejected by the Nebraska Supreme Court in *Jacobs*, where the court noted that its previous cases had utilized the primary purpose approach, but that the approach had been widely criticized, and went on to employ the *Matter of Marks* test, stating:

> The rule as set out in *Matter of Marks, supra*, makes clear that we need not engage in a weighing of errands performed after arrival at the destination to determine whether a trip is in the course of employment. . . .
>
> Under *Marks*, what plaintiff did with his spare time is largely irrelevant if his work either created the necessity for travel or was a concurrent cause of the trip. *Business need not have been the "major factor" in inducing this particular trip if the trip would have been made at some time to accomplish the business.*

(Emphasis supplied.) *Jacobs*, 237 Neb. at 776, 467 N.W.2d at

867.

In the present case, the trial judge found that Kraus would have traveled to Progressive Automotive in Lincoln at a different time had he not done so on the date of the accident. This finding is supported by the record. Karen Kraus testified that Kraus had planned to stop and meet with several distributors on his journey home from his planned trip to North Platte. Both Karen Kraus and Thomas Kraus testified that Kraus had been particularly concerned about Progressive Automotive because of a significant drop in parts that it had ordered from Jones Automotive during the previous year. In addition, Daniel Hicks, the owner of Progressive Automotive, testified in a deposition that was admitted into evidence that Kraus stopped to meet with Hicks at least six times per year. Hicks testified that Kraus would surely have ventured to Lincoln sometime in February 1993, because Hicks had requested some price sheets from Jones Automotive in January and because the winter and spring months are the time of year when automotive distributors stock their inventory for the busy summer season. We find that the review panel correctly held that the trial judge was not clearly wrong in determining that Kraus' trip, as a whole, was undertaken for a business purpose.

The determination that Kraus' accident occurred during a business trip does not necessarily mean that his death is compensable. Rather, if Kraus' accident occurred while he was deviating from his business purpose for personal reasons, his death would not be compensable under the Nebraska Workers' Compensation Act.

*Deviation From Business Trip.*

As noted above, the dual purpose doctrine serves to label the overall trip as business or as personal. Once the trip is labeled a business trip, it must be determined whether the accident in question occurred during a deviation from the business purpose. See 1 Larson & Larson, *supra*, § 19.10.

We have assumed that Kraus ventured from Lincoln to Aurora for personal reasons and thus deviated from his business purpose. However, Kraus' accident occurred on the stretch of his trip between Aurora and Omaha. The critical

question now becomes whether Kraus was still on a personal deviation or whether he had resumed his business purpose when his accident occurred.

In *Murphy v. Hi-Way G.M.C. Sales & Service Corp.*, 178 Neb. 397, 400, 133 N.W.2d 595, 597 (1965), the court set forth the rule for determining when an employee who deviates from a business trip for personal reasons is considered to have reentered the course of employment, stating:

> "Where an employee deviates from the scope of his employment for purposes of his own, he is regarded as being outside the scope of his employment until he has returned either to the point of deviation from the path of duty, or to a point where in the performance of duty he is required to be. * * * Where an employee has returned to the point of deviation and engages in the duties of his employment, or engages in acts reasonably incidental to his employment, which, but for the deviation, would have been performed, although at an earlier time, he is within his employment and the coverage of the Workmen's Compensation Act."

Accord *Gibb v. Highway G.M.C. Sales & Service Corp.*, 178 Neb. 127, 132 N.W.2d 297 (1964).

In the Larson treatise on workers' compensation, it states that any business trip that begins from a particular place, such as the employee's home or office, must necessarily contemplate both an outgoing and a returning trip. 1 Larson & Larson, *supra*, § 19.29(a). Further, the Larson treatise states that "the return trip from a dual-purpose journey, at any point where it constitutes a return from places that had to be reached for business reasons, is within the course of employment." *Id.*, § 19.29(a) at 4-368.

Jones Automotive argues that because Kraus did not return to his geographical point of deviation, he could not have reentered the scope and course of his employment. We disagree. Because Kraus is deceased and no witness was produced with personal knowledge of which roads Kraus traveled en route to Lincoln, we will never know the exact route that he traveled from Omaha to Lincoln. It is even possible that Kraus drove west on Highway 92 en route to Lincoln, thus making the point

of his accident along his business route. However, we do not need to reach this conclusion to resolve this case. In both *Murphy* and *Gibb*, the court did not indicate that in order to find that an employee had resumed his employment, it must be proven that the employee had crossed the exact geographical point of deviation. In *Gibb*, the court stated that the point of deviation is "the *most acceptable* point for reentering the scope of the employment." (Emphasis supplied.) 178 Neb. at 133, 132 N.W.2d at 301. Likewise, in *Murphy*, the court stated, "Under the rule of [*Gibb*] it is *sufficient* that [the employee] had returned to the point of deviation before the accident happened." (Emphasis supplied.) 178 Neb. at 401, 133 N.W.2d at 598. The quoted language from these two cases indicates that while it is "acceptable" or "sufficient" for an employee to reenter the course of employment at the point of deviation, it is not mandatory that the employee do so. This interpretation finds support in the Larson treatise on worker's compensation. The treatise labels cases similar to the present case "triangular cases." These cases are labeled as such because often the pattern traveled by the employee forms a triangle, with the points on the triangle being the place of employment or point of origin, the employment destination, and the personal destination. With regard to these cases, the treatise states:

> In these triangular cases, then, no fixed formula seems possible. Perhaps the most that can be said is that *the court must form a judgment on whether the real function of the journey back toward the main route is essentially to undo the effects of the private detour or to carry the employee toward his employment destination.*

(Emphasis supplied.) 1 Larson & Larson, *supra*, §. 19.43 at 4-418.

In the present case, the accident occurred just a few miles outside of Omaha. At the time of the accident, Kraus was not undoing the effects of his deviation, but was returning to his place of employment, which he would have had to do even if he had not gone to Aurora. The trial court thus correctly determined that Kraus' personal deviation had ended and that Kraus had reassumed his business purpose when his accident occurred.

To accept Jones Automotive's argument and hold that Kraus was out of the course of employment merely because he did not return to a certain geographical spot or stretch of highway on his return journey to Omaha would be an arbitrary decision. Indeed, it would be an eccentric result to allow compensation if Kraus had traveled through Lincoln on his return from Aurora and had an accident some 60 miles from Omaha, yet deny compensation in this case merely because Kraus failed to drive through Lincoln on his return trip, even though the accident actually occurred on the outskirts of Omaha, the point from which he undeniably began his business trip. We find that Kraus was within the scope and course of his employment when his fatal accident occurred.

In reaching our decision, we have considered *McDuffee v. Seiler Surgical Co., Inc.*, 172 Neb. 325, 109 N.W.2d 384 (1961), a case, factually similar to the present case, in which compensation was denied. We have not relied on *McDuffee* because it was decided before *Jacobs v. Consolidated Tel. Co.*, 237 Neb. 772, 467 N.W.2d 864 (1991); *Murphy*; and *Gibb*, and our analysis is more consistent with these latter cases and with current workers' compensation jurisprudence which we have discussed above.

Because we affirm the determination that Kraus was within the course and scope of his employment when he sustained his fatal injuries, we need not discuss Jones Automotive's second and third consolidated assigned errors. We also note that Jones Automotive did not discuss its fourth consolidated assigned error in its brief. It is well established that an appellate court will not consider assignments of error which are not discussed in the brief. *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993); *Mix v. City of Lincoln*, 244 Neb. 561, 508 N.W.2d 549 (1993). We therefore reject Jones Automotive's fourth assigned error.

*Penalty.*

Karen Kraus claims in her cross-appeal that the compensation court should have awarded her and her children a 50-percent penalty, in accordance with Neb. Rev. Stat. § 48-125 (Reissue 1993). As construed by the Nebraska

Supreme Court, § 48-125 authorizes a 50-percent payment for waiting time where an employer is delinquent in paying compensation and where there is no reasonable controversy regarding the employee's claim for workers' compensation benefits. *Mendoza v. Omaha Meat Processors*, 225 Neb. 771, 408 N.W.2d 280 (1987).

 Whether a reasonable controversy exists regarding § 48-125 is a question of fact. *Leitz v. Roberts Dairy*, 239 Neb. 907, 479 N.W.2d 464 (1992); *Mendoza, supra.*

 In *Mendoza*, the court set forth some criteria for determining whether a reasonable controversy exists, stating:

> [A] reasonable controversy may exist: (1) if there is a question of law previously unanswered by the Supreme Court, which question must be answered to determine a right or liability for disposition of a claim under the Nebraska Workers' Compensation Act, or (2) if the properly adduced evidence would support reasonable but opposite conclusions by the Nebraska Workers' Compensation Court concerning an aspect of an employee's claim for workers' compensation, which conclusions affect allowance or rejection of an employee's claim, in whole or part. To avoid the payments assessable under § 48-125, an employer need not prevail in opposition to an employee's claim for compensation, but must have an actual basis, in law or fact, for disputing the employee's claim and refraining from payment of compensation.

225 Neb. at 784-85, 408 N.W.2d at 288.

We find that a reasonable controversy existed regarding Karen Kraus' claim for benefits in this case. Karen Kraus and her children are therefore not entitled to a 50-percent penalty.

## CONCLUSION

The decision of the review panel is affirmed.

AFFIRMED.