Louis Parotto, Appellee, v. Standard Paving Company, Appellant.

Gen. No. 45,505.

Opinion filed February 19, 1952. Released for publication March 3, 1952.

Ross, BERCHEM & SCHWANTES, of Chicago, for appellant.

HARRY I. PARSONS, and CIRESE & CIRESE, all of Chicago, for appellee; CHARLES D. SNEWIND, of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

Plaintiff sued defendant for personal injuries and a jury returned a verdict for $25,000 upon which judgment was entered, and from which judgment defendant appeals.

No evidence was offered on behalf of defendant. It is contended that a verdict should have been directed by the trial court at the close of all the evidence.

The facts disclose that plaintiff suffered serious injuries at about 1:00 a. m. June 11, 1948. He was

standing in front of a properly.parked pickup truck assisting in its repair when the vehicle was struck from behind by a ton-and-a-half Ford truck driven by defendant's employee, James Mellon, causing the pickup truck to violently strike the plaintiff.

The sole question before us for decision is whether defendant's employee was at the time and place of the accident engaged in the master's business.

Mellon had been working for defendant as a truck driver for about a year prior to the accident. He was 32 years of age, married, and lived at 4705 West Harrison street, Chicago, Illinois. Defendant was engaged in the business of street paving. Mellon worked out of defendant's garage at 1101 South Cicero avenue. His duties required him to pick up the truck in the morning at the garage and haul concrete to a particular job pursuant to orders received the night before. He kept his own time and was not required to punch a clock. On June 10, 1948, he left the garage around 7:00 a. m. and went to a job at 31st and Halsted streets. Later he went to another job at 91st and Elizabeth streets. He left the job at 91st and Elizabeth streets in late afternoon, accompanied by two employees, intending to take them to the garage. However, upon reaching the garage he continued north for several blocks on Cicero avenue, stopping at Harrison street, where his fellow employees got off and went into a tavern. Mellon then drove the truck to his home, which was in the neighborhood. Later he returned to Harrison and Cicero avenues, picked up the two men, and drove to a tavern on Damen avenue, which is 2000 west. After a stop there they continued on to another tavern on Montrose avenue (4400 north) near Western avenue (2400 west), and remained there until about 12:30 a. m. the following morning watching television. While on his way back to the garage driving south on Pulaski road (4000 west), at 1300 north, the accident happened.

Defendant contends that in view of the fact that the accident happened some four miles from its garage and about seven hours later than the time at which Mellon would ordinarily be expected to return his truck for the night, defendant's employee as a matter of law had so substantially deviated from the terms and conditions of the employment as to relieve the employer from liability for the employee's tortious act.

In at least two Appellate Court cases, *Cohen v. Fayette,* 233 Ill. App. 458, and *Fogel v. 1324 N. Clark Street Bldg. Corp.,* 278 Ill. App. 286, there is language to the effect that when a servant takes the master's vehicle upon a journey of his own for a purpose wholly disconnected with the work he is hired to do the relation of master and servant is suspended during the whole of such journey, including that portion involved in returning the vehicle to the master's garage. In a later Appellate Court case, *Wagner v. Chicago Motor Coach Co.,* 288 Ill. App. 402, the effect of the holding was that if after a departure from the master's business the employee was seeking to return the motor vehicle to the master's garage, it would be considered that he was engaged in the master's business. These apparently conflicting Appellate Court cases, however, may be disregarded inasmuch as the Supreme Court in at least four cases has enunciated the principle governing this subject matter. These, in chronological order, are *Kavale v. Morton Salt Co.,* 242 Ill. App. 205, 329 Ill. 445 (1928), relied upon by plaintiff; *Lohr v. H. Barkmann Cartage Co.,* 335 Ill. 335 (1929); *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387, reversing 254 Ill. App. 526 (1930); and *Public Service Co. of Northern Illinois v. Industrial Commission,* 395 Ill. 238 (1946), cited by defendant.

Plaintiff maintains that the facts in the instant case bring it within the rule announced in *Kavale v. Morton Salt Co.* and that the other Supreme Court cases are

distinguishable. In the *Kavale* case the plaintiff was run down and injured by a truck owned by the defendant and driven by its chauffeur on 22nd street in Chicago. The evidence there relied on by the plaintiff to support his contention that defendant's negligent employee was at the time of the accident engaged in the employer's business is as follows: Defendant's employee (Fotre) testified that about noon he left the yard of defendant after having been advised that there were no further duties for him to perform and to take the truck to a garage at 2625 South Wabash avenue. Fotre and another employee then got in the truck, drove to a point about a mile north of the garage, and stopped for lunch. After lunch he drove in a direction away from the garage, to his fellow employee's boardinghouse where they did some drinking and stayed about an hour and a half, when they started for a barbershop. As the barbershop was crowded, they departed and were in the general vicinity of the garage when the accident happened. It appears that Fotre was intoxicated at the time. The pertinent issue of fact in the case was whether or not Fotre approached 22nd street from the south or from the north. If Fotre was traveling north on Wabash avenue when he started to turn west on 22nd street, he was going away from the employer's garage. On the other hand, if he was traveling south on Wabash avenue before making the west turn into 22nd street, he was going toward the garage, inasmuch as the garage was south of 22nd street. The employee testified that he was driving north on Wabash avenue and not going to the garage at the time of the accident. There was testimony to the contrary. The effect of the court's holding was that if the servant was attempting to deliver the truck to the master's garage at the time of the accident, even though there had been a

prior deviation from the employment, that the employee was then engaged in the master's business.

Although the *Kavale* case does not discuss the question of slight or substantial deviation from the terms of the employment or indicate guideposts by which to determine when the deviation from the master's business is of such consequence as to require a holding that the employee was entirely divorced therefrom, the facts there considered are so substantially analogous to those in the instant case that we are compelled to follow the views there expressed. It is true that in the instant case the defendant's servant was several miles from defendant's garage, whereas in the *Kavale* case he was in the immediate vicinity. The point is of minor significance, however, in view of the fact the servant here admittedly was on the way to the employer's garage. In the *Kavale* case the deviation from the master's business had existed for not more than three hours, while in the instant case it was a matter of seven hours; but we are unable to say that this difference in time is of such significance as to compel the conclusion, as a matter of law, that defendant's servant was no longer engaged in the master's business. The instant case on the facts seems to be a much stronger case than the *Kavale* case to support the principle involved, because in the latter the employee was admittedly drunk at the time of the accident and there is considerable question whether he was able to form an intention of returning the vehicle to the employer's garage and he testified that he did not so intend; whereas in the instant case the all-important fact that the employee was returning the truck to the garage is admitted.

Defendant relies upon the case of *Lohr v. H. Barkmann Cartage Co.*, 335 Ill. 335, where the plaintiff was injured by defendant's truck driven by defendant's servant. In that case the servant-chauffeur had not

returned the truck to the defendant-employer's garage at 5:00 p. m. and a search was instituted by defendant to find him. Later that night the son of the president of the defendant-company found the truck being driven about the streets of Chicago by two strangers. He curbed the truck and inquired from the strangers as to the whereabouts of his employee Schwinnen. One of the men replied that they did not know. Barkmann thereon turned off the switch of the truck and went to a telephone to report to his father that he had found the truck. During his absence at the telephone the truck was driven away and when Barkmann again caught up with it he found Schwinnen driving and the two strangers were passengers. Schwinnen eluded Barkmann, and about 8:30 that evening, some miles from defendant's garage and while the truck was proceeding in a direction *away from the garage,* the accident happened. The evidence clearly shows that the employee was on a mission of his own at the time of the accident, that he stated he was on his way to meet some girls, and that he was making no effort to perform any service for the master.

*Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387, relied on by defendant, we think is also distinguishable on the facts. Plaintiff's intestate there was killed in a collision between an automobile carefully driven by his father and one negligently driven by one Smith, an employee and salesman of defendant-company. The employee had taken a car from the employer's garage without consent and in violation of the employer's express prohibition. In this connection the court observed (p. 393):

"Smith had no more authority than any stranger to take the car, whether he took it for the purpose of demonstrating or of going to the card party. When he took the car out on the street, and at all times until it was returned, his possession was not the lawful

possession of an agent of the owner within the scope of his employment but was the unlawful possession of a wrongdoer, and the plaintiff in error was not liable for the acts of the wrongdoer.''

Such are not the ultimate facts in the instant case. Here the possession of the truck by the employee was lawful. He had been entrusted with the truck by the employer and was authorized to drive it. While it is true that under the implied terms of his employment he should have returned the truck several hours prior to the time that he was attempting to return it, his violation of his instructions did not make the possession illegal. It could not be said of him, as the court said in the *Stutz* case of the employee there, that he had ''no more authority than any stranger to take the car.'' The disobedient employee in this case was not serving his master well by virtue of his tardiness and his temporary deviation from his duties, but that he was serving him at the time of the accident seems to be a necessary conclusion from the admitted facts.

The final case, relied upon by defendant to support its position, is *Public Service Co. of Northern Illinois v. Industrial Commission,* 395 Ill. 238. There the Public Service Company of Northern Illinois operated a private garage and yard, located about 1300 feet west of the tracks of the Chicago, Rock Island and Pacific railroad, and an ancillary garage located some 500 feet west of the tracks. It employed one Alamprese to grease and wash cars and perform other incidental services, but he was not authorized to drive cars beyond the confines of the yard except when circumstances required him to drive them from one garage to the other. Alamprese lived a block east of the railroad tracks. His hours of work were from 4:30 p. m. until 1:30 a. m. Shortly after 5:00 p. m. he drove a car from the main garage to his residence to see if his

children were safe as his wife worked away from home during the day. After being in his house a few minutes he started to take the car back to the garage and while driving west across·the tracks was struck by a train and killed. The widow sued to recover compensation for accidental injuries causing death alleged to have arisen out of and in the course of his employment. The employer contended that going eastward from the garage across the railroad tracks to his house and back again was such a deviation from the course of his em-. ployment as to relieve the employer from liability under the provisions of the Workmen's Compensation Act. The widow contended that the deviation was slight and since the decedent was on his way back to the garage to store the car he was in the course of his employment when he was killed. The court concluded that Alamprese at the time of the accident was not acting within the scope of his employment, stating (p. 242):

"Whatever good reasons the deceased had for going to his home were not included among his duties, and when he got to a place where it became necessary for him to incur the risk of crossing a railroad track on the way back, which, except for his deviation, would not have occurred, the risk was wholly his, and he would not, during said time, be in the course of his employer's employment."

Plaintiff contends that the *Public Service Co.* case is distinguishable on the ground that the employee had no authority, express or implied, to operate the automobile in question at any place beyond the yard of the employer, and accordingly falls within those cases above discussed where the original taking by the employee was unlawful. We are not persuaded that this is a valid distinction inasmuch as the employee in the *Public Service Co.* case was permitted on occasion to drive automobiles from one lot to the

other, and it does not clearly appear, nor does the court hold, that the possession of the car on the day in question was illegal. However, we think it very significant that none of the leading cases referred to or reviewed in this opinion dealing with the problem were so much as mentioned in the *Public Service Co.* case. As a matter of fact, there are no cases there cited except workmen's compensation cases. We conclude, therefore, that the deviation from the terms of employment which bars an employee from a recovery under the Workmen's Compensation Act need not be so substantial as one which would bar a third party from a recovery against the employer of a tortious employee. While the distinction may be challenged from the standpoint of strict logic, it is not without sanction from the standpoint of sound policy. To permit the employee or his personal representative to recover from an employer for the injury or death of the employee who is killed while returning from a mission undertaken in violation of the terms of his employment would allow him to take advantage of his own willfulness. In the instant case, however, a non-negligent third person was injured by a truck belonging to the employer which the latter had voluntarily entrusted to the employee, and at a time when the employee, however ineptly, was attempting to comply with a directive of his employment by returning the master's vehicle to the master's garage. While the court in the *Public Service Co.* case apparently was of the opinion that the deviation from employment rule should not be so interpreted as to become a club by a perverse employee in a suit against the employer, the same court in the *Kavale* case was evidently of the opinion that it should not be used as a refuge by the employer to escape application of the doctrine of "respondeat superior" when a non-negligent third party seeks his common-law remedy.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

Schwartz and Robson, JJ., concur.