2015 S.D. 10

**Aaron TERVEEN, Claimant
and Appellant,**

v.

**SOUTH DAKOTA DEPARTMENT OF
TRANSPORTATION, Employer
and Appellee,**

and

**South Dakota Worker's Compensation,
Appellee.**

No. 27097.

Supreme Court of South Dakota.

Considered on Briefs on Jan. 12, 2015.

Decided March 4, 2015.

Daniel E. Ashmore Rebecca L. Mann of Gunderson, Palmer, Nelson & Ashmore LLP, Rapid City, South Dakota, Attorneys for claimant and appellant.

Robert B. Anderson of May, Adam, Gerdes & Thompson LLP, Pierre, South Dakota, Attorneys for employer and appellees.

GILBERTSON, Chief Justice.

[¶ 1.] Aaron Terveen was on a business trip from Belle Fourche to Yankton, South Dakota. On the return trip, Terveen was injured in a car accident outside Belle Fourche while driving on a dead-end road just off the highway. Terveen applied for workers' compensation benefits. The Department of Labor granted Terveen's claim, but the circuit court reversed. We affirm.

**Facts and Procedural History**

[¶ 2.] Terveen was an employee for the South Dakota Department of Transportation (DOT) working out of Belle Fourche. Terveen was a journey transportation technician, which required him to travel to various locations outside of Belle Fourche. Terveen usually checked in at the office when he returned from a work-related trip. There was no DOT policy prohibiting employees from making stops along their travel routes. DOT allowed its employees to engage in certain personal activities during their work-related trips, such as seeing family and friends and stopping at Cabela's for personal shopping.

[¶ 3.] Terveen was returning from a work-related trip to Yankton on November 16, 2011. At 6:28 p.m., Terveen sent a text message to his wife telling her that he would meet her at dinner in fifteen minutes at the Belle Inn located across the road from the DOT shop. Before he could check into the DOT office, Terveen was injured in a one-automobile accident between 6:30 p.m. and 7:00 p.m. one-half mile away from the highway. At the time of the accident, Terveen was travelling eastward on Prairie Hills Road toward Highway 85—a highway to Belle Fourche. Prairie Hills Road is only accessible from Wood Road, which itself is accessible only from Highway 85. Driving from Highway 85 to Prairie Hills Road then back to the highway would take less than ten minutes. The site of the accident was approximately two-and-a-half miles from the DOT shop. Terveen has no recollection of the accident or why he turned onto Prairie Hills Road. Neither Terveen nor anyone else knows why he was at the location where the accident occurred.

[¶ 4.] Along with his DOT job, Terveen occasionally worked for Tom Janklow by repossessing vehicles. Terveen spoke to Janklow at 5:48 p.m. before the accident. They did not discuss any aspect of the repossession business during this conversation. However, Terveen's personal Blackberry was recovered from his car after the accident, and it was on an internet website showing a repossession order for a vehicle located on Prairie Hills Road. To repossess the vehicle, Terveen would have required an order for repossession and a truck from Janklow's office, neither of which Terveen had at the time of the accident. No vehicles associated with the

account Terveen accessed have been repossessed.

[¶ 5.] Terveen applied for workers' compensation benefits with the Department of Labor (the Department). The Department determined Terveen sustained an injury arising out of and in the course of his employment. DOT appealed to the circuit court. The circuit court reversed the Department's decision and dismissed Terveen's claim. Terveen appeals raising one issue—whether the court erred in holding Terveen's accident and resulting injuries did not arise out of and in the course of his employment with DOT.

## Standard of Review

[¶ 6.] Our standard of review is governed by SDCL 1–26–37. *Vollmer v. Wal–Mart Store, Inc.,* 2007 S.D. 25, ¶ 12, 729 N.W.2d 377, 382. The agency's findings are reviewed for clear error. *Id.* However, findings based on documentary evidence, such as depositions, are reviewed de novo. *Id.* Questions of law are also reviewed de novo. *Kuhle v. Lecy Chiropractic,* 2006 S.D. 16, ¶ 16, 711 N.W.2d 244, 247. Our review of the circuit court's appellate review is "unaided by any presumption that the [circuit] court is correct." *Brown v. Douglas Sch. Dist.,* 2002 S.D. 92, ¶ 17, 650 N.W.2d 264, 269 (quoting *Kurtz v. SCI,* 1998 S.D. 37, ¶ 10, 576 N.W.2d 878, 882).

## Analysis and Decision

[¶ 7.] Terveen argues his injury arose out of and in the course of his employment because Terveen's employment with DOT contributed in causing his injury and because DOT allowed him to step aside from his work-related travel for personal reasons. DOT responds that Terveen's injury did not arise out of and in the course of his employment because working for another employer is not the type of personal errand covered under South Dakota law.

[¶ 8.] A claimant wanting to recover worker's compensation "must prove by a preponderance of the evidence that she sustained an injury 'arising out of and in the course of the employment.'" *Fair v. Nash Finch Co.,* 2007 S.D. 16, ¶ 9, 728 N.W.2d 623, 628 (alteration in original) (quoting *Bender v. Dakota Resorts Mgmt. Grp., Inc.,* 2005 S.D. 81, ¶ 7, 700 N.W.2d 739, 742). "Both factors of the analysis, 'arising out of employment' and 'in the course of employment,' must be present in all claims for workers' compensation." *Id.* (quoting *Bender,* 2005 S.D. 81, ¶ 9, 700 N.W.2d at 742). "The interplay of these factors may allow the strength of one factor to make up for the deficiencies in strength of the other." *Id.* "These factors are construed liberally so that the application of the workers' compensation statutes is 'not limited solely to the times when the employee is engaged in the work that he was hired to perform.'" *Id.* ¶ 9, 728 N.W.2d at 628–29 (quoting *Bender,* 2005 S.D. 81, ¶ 8, 700 N.W.2d at 742). "Each of the factors is analyzed independently although 'they are part of the general inquiry of whether the injury or condition complained of is connected to the employment.'" *Id.* ¶ 9, 728 N.W.2d at 629 (quoting *Bender,* 2005 S.D. 81, ¶ 9, 700 N.W.2d at 742).

[¶ 9.] The first aspect of Terveen's claim is to address whether Terveen's injury "arose out of" his employment. "In order for the injury to 'arise out of' the employment, the employee must show that there is a 'causal connection between the injury and the employment.'" *Id.* ¶ 10 (quoting *Bender,* 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742). While the employment does not need to "be the direct or proximate cause of the injury, the accident must have its 'origin in the hazard to which the employment exposed the em-

ployee while doing her work.'" *Id.* (quoting *Bender*, 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742). It needs to be shown that the injury "would not have occurred but for the employment." *Phillips v. John Morrell & Co.*, 484 N.W.2d 527, 530 (S.D.1992). "The injury 'arose out of the' employment if: 1) the employment contributes to causing the injury; 2) the activity is one in which the employee might reasonably engage; or 3) the activity brings about the disability upon which compensation is based." *Fair*, 2007 S.D. 16, ¶ 10, 728 N.W.2d at 629 (quoting *Bender*, 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742).

[¶ 10.] Terveen argues that his injury did arise out of his employment because he was injured on his way back from a work-related trip to Yankton. Because he had yet to return to the DOT office, as he normally did when returning from work-related trips, Terveen contends the accident had its "origin in the hazard to which the employment exposed[.]" *See id.* (quoting *Bender*, 2005 S.D. 81, ¶ 10, 700 N.W.2d at 742) (internal quotation mark omitted). Furthermore, Terveen points out that the detour was ten minutes in relation to an 840-mile round trip and that DOT has accepted and condoned personal activities during work-related travel. Terveen argues that his short detour was an activity in which a DOT employee may reasonably engage. We disagree.

[¶ 11.] Terveen was not engaging in work-related travel at the time of the accident. Even while acknowledging that Terveen's employment caused him to travel from Yankton to Belle Fourche, Terveen's employment did not compel him to travel down Prairie Hills Road. Terveen responds by arguing that he would not have been in a position to go down Prairie Hills Road if he were not coming back from Yankton on work-related travel. While Terveen's employment exposes him to the risk of a car accident, his employment did not expose him to the risk of injury on *Prairie Hills Road.* Furthermore, while DOT had condoned deviations in the form of personal trips to see family or friends and shopping trips to Cabela's, DOT has not authorized trips to further employment for another employer, as is likely in this case. It should not be reasonably expected for an employee to engage in activities to promote another employer and have the first employer be liable for injuries sustained during that time. Due to Terveen's lack of explanation, there is no way of knowing what caused Terveen to travel down Prairie Hills Road.

[¶ 12.] The second aspect of Terveen's claim to address is whether he was injured "in the course of" his employment. "The term 'in the course of employment' refers to the time, place, and circumstances of the injury." *Id.* ¶ 11 (quoting *Bender*, 2005 S.D. 81, ¶ 11, 700 N.W.2d at 742). "An employee is acting 'in the course of employment' when an employee is 'doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment.'" *Id.* (quoting *Bender*, 2005 S.D. 81, ¶ 11, 700 N.W.2d at 742).

[¶ 13.] Terveen is considered an "outside employee" due to his employment requiring him to travel away from his home a majority of the time. "The 'course of the employment' of an outside employee is necessarily broader than that of an ordinary employee. His work creates the necessity of staying at hotels, eating at various places, and of travel in going to and returning from these places." *Krier v. Dick's Linoleum Shop*, 78 S.D. 116, 119, 98 N.W.2d 486, 488 (1959).

[¶ 14.] Terveen argues his personal errand was naturally and incidentally related to his DOT employment because he spent

a lot of time on the road. DOT argues that even though some personal activities can be included in the course of employment, only personal activities involving self-care, such as "eating, resting, smoking, or using bathroom facilities[,]" should be considered in the course of employment. *See Norton v. Deuel Sch. Dist.*, 2004 S.D. 6, ¶ 21, 674 N.W.2d 518, 523. DOT suggests that we should not extend our notion of 'in the course of employment' to include any personal errand, including "independent, self-serving endeavors unrelated to [one's] job[.]" *See S.D. Pub. Entity Pool for Liab. v. Winger*, 1997 S.D. 77, ¶ 14, 566 N.W.2d 125, 130.

[¶ 15.] Terveen was not engaging in an activity naturally or incidentally related to his employment with DOT. His activity on Prairie Hills Road was not naturally related because he was supposed to return to Belle Fourche, not meander down a dead-end side road for no apparent purpose. We can infer from the facts that Terveen went to Prairie Hills Road to scope out a potential repossession for his part-time employment with Janklow. Regardless, the purpose of Terveen's detour was not incidental to his employment with DOT as the trip was not related to self-care activities.

[¶ 16.] Furthermore, Terveen, apparently driving to locate a potential repossession job, was not impliedly authorized by the nature of the contract. Terveen suggests DOT authorized his personal trip because DOT has allowed personal errands in the past. However, DOT had not authorized employees to deviate from their work to serve the interest of another employer. Because Terveen does not provide a reason why he ventured to Prairie Hills Road, there is no way of determining if his deviation was, in fact, the kind of personal errand authorized by DOT.

[¶ 17.] As the circuit court correctly noted, Terveen offered no proof or even a plausible explanation of why he ventured onto Prairie Hills Road. This is critical as Terveen bears the burden of proof in this case. *See Fair*, 2007 S.D. 16, ¶ 9, 728 N.W.2d at 628. Terveen does not explain that the reason for his deviation could have been caused by him needing to go to a gas station, a route home, getting lost, finding a restaurant or hotel, going to a DOT station, etc. Terveen could not remember why he traveled down Prairie Hills Road. Thus, there is no record that Terveen's trip to Prairie Hills Road was either naturally or incidentally related to his employment or expressly or impliedly authorized by the DOT.

[¶ 18.] Terveen argues that even if this Court concludes that Terveen's detour was for personal reasons, any deviation was insubstantial allowing his injury to be compensable. An employee's deviation from work duties "does not 'automatically constitute departures from employment, but may … be found insubstantial.'" *Id.* ¶ 16, 728 N.W.2d at 631 (quoting *Phillips*, 484 N.W.2d at 530). "Thus, the mere fact that an employee deviates from her work does not preclude a finding that her injuries are compensable." *Id.*

[¶ 19.] Professor Larson characterizes insubstantial deviations as those "largely the kind of momentary diversions which, if undertaken by an inside employee working under fixed time and place limitations, would be compensable under the personal comfort doctrine." Arthur Larson, *Larson Workers' Compensation* § 17.06[3] (2014). Under his analysis of the personal comfort doctrine, Professor Larson notes, "Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment,

*unless* the extent of the departure is so great that an intent to abandon the job temporarily may be inferred[.]" *Id.* at § 21, Scope (emphasis added). Terveen's deviation was not to obtain personal comfort, such as acquiring sustenance, rest, toilet facilities, seeking warmth, etc. Rather, Terveen went out of his way to travel down a dead-end pathway possibly to view the premises of a potential vehicle repossession. While Terveen argues that the deviation's length of time was short, Terveen's departure, no matter the length, demonstrated intent to abandon his DOT job temporarily. Thus, even though Terveen's deviation could have taken ten minutes in total, going down a dead-end road without a defined reason for personal comfort or explanation, such as getting lost, was a substantial deviation removing Terveen from being within the course of his employment.[1]

[¶ 20.] The next aspect of Terveen's deviation to examine is exactly when, if at all, Terveen resumed acting within the course of his employment. This appears to be a case of first impression for this Court, and Professor Larson identifies that there is a split of authority on this issue. *See* Larson, *supra* ¶ 21, at § 17.03[5]. First, this Court needs to identify the kind of deviation Terveen undertook. Professor Larson would likely classify this deviation as returning from a side-trip in the course of the business journey as Terveen was driving back toward Highway 85 before completing his business journey by checking-in with the Belle Fourche DOT office. *See id.* We must look at the competing rules when a claimant is injured while returning from the side-trip, but before returning to the business journey path.

[¶ 21.] DOT urges this Court to adopt the majority rule in this instance "requir[ing] an employee, who has made a personal side-trip, to 'get back on the beam' before being deemed to have resumed the business trip." *Id.* at § 17.03[5]. Therefore, the majority rule would deny Terveen coverage until he returned back to Highway 85. Terveen advocates for the minority rule allowing compensation when the return from the personal detour has commenced. Therefore, the minority rule would grant Terveen coverage as soon has he started heading back toward the highway.

[¶ 22.] Professor Larson comments that the minority rule, advocated by Terveen, is "weakened by the fact that the rule often serves merely as an alternative ground of decision which the court thinks desirable on other grounds as well, and by the fact that the deviations are often rather small and come very near being independently justifiable." *Id.* Moreover, Professor Larson notes that vicarious liability cases are more liberal "and treats the course of employment as resumed when, on completion of the personal errand, the employee proceeds back in the direction of work duties," *id.* at § 17.03[5] n. 32, which is similar to that of the minority rule. Consequently, there is a "distinction between vicarious liability and workers' compensation standards applicable to deviation[.]" *Id.* The policy reason underlying

---

1. Terveen relies on *Fair v. Nash Finch Co.* and *Fettig v. GNG, Inc. & Reliamax*, 2012 WL 6882071 (S.D. Dep't Lab.), to support his position that his trip down Prairie Hills Road was insubstantial, thus, insufficient to bar compensation. In both these cases, claimants were able to recover from injuries suffered on work premises either before or after their work shift. These cases are not analogous with the present case. In the cases cited by Terveen, the injury occurred either before or after work hours—not during—and the injuries occurred at reasonably foreseeable locations—the employment premises—not on a dead-end street with no apparent purpose.

this distinction is probably "that in the compensation cases the deviation is a conscious and deliberate one by the very person who attempts to benefit by the rule, while in the vicarious liability cases the injured third persons are not interested in the arrangements and instructions between employer and employee[.]" *Id.* "To permit the employee or his personal representative to recover from an employer for the injury or death of the employee who is killed while returning from a mission undertaken in violation of the terms of his employment would allow him to take advantage of his own willfulness." *Id.* (quoting *Parotto v. Standard Paving Co.*, 345 Ill.App. 486, 104 N.E.2d 102, 105 (1952)). While there is a distinction between vicarious liability and the minority rule for workers' compensation cases, a policy argument in favor of the majority rule can be derived from the distinction. Terveen should not be allowed to take advantage of his own willful and deliberate action to go down a dead-end road for no apparent reason.

[¶ 23.] Terveen does quote Professor Larson stating that "with a completed personal errand put behind, and a business destination remaining to be reached, there is the clearest kind of coverage." *Id.* at § 17.02[5]. However, Terveen quotes this language from the section where there is a *direct* route to both the personal and business destination. Here, however, there is no single, direct route between Yankton, Prairie Hills Road, and Belle Fourche. There was a clearly severable side-trip. For the forgoing reasons, this Court adopts the majority rule for this case as identified by Professor Larson when addressing severable side-trips.[2] Terveen failed to resume acting in the course of his employment.[3]

## Conclusion

[¶ 24.] Terveen could neither get home nor finish his DOT task by going down Prairie Hills Road; rather he could only

---

2. Terveen cites *Kraus v. Jones Auto., Inc.*, 3 Neb.App. 577, 529 N.W.2d 108 (1995) for the proposition that "hold[ing] [an employee] was out of the course of employment merely because he did not return to a certain geographical spot or stretch of highway on his return journey to [the point he began the business trip] would be an arbitrary decision." *Id.* at 115. First, *Kraus* is distinguishable on the facts. Kraus traveled southwest for a business trip then made a personal deviation west of his business destination. *Id.* at 111. Returning on an alternative route (traveling north then east), Kraus died in an accident outside his original place of departure. *Id.* at 112. Second, Terveen's case involved a severable side-trip, not a 'triangular deviation' as seen in *Kraus*.

> In ... triangular cases ... no fixed formula seems possible. Perhaps the most that can be said is that the court must form a judgment on whether the real function of the journey back toward the main route is essentially to undo the effects of the private detour or to carry the employee toward the employment destination.

Larson, *supra* ¶ 21, at § 17.04[3]. There are many different fact patterns for deviations, and the majority rule for returning from a side-trip in the course of a business journey is not a one-size fits all standard for deviations. Thus, this Court's adoption of the majority rule would neither necessarily affect nor necessarily be applicable to 'triangle' cases where potential claimants take an alternative route home—or even other distinct deviation fact patterns.

3. Terveen also argues that his injuries are compensable under the dual purpose doctrine contending that the deviation was primarily a business trip. While the trip to Yankton was primarily business, Terveen's trip down Prairie Hills Road was personal as it "would have been dropped in the event of failure of the private purpose, though the business errand remained undone[.]" *Johnson v. Skelly Oil Co.*, 288 N.W.2d 493, 495 (S.D.1980) (alteration in original) (quoting Larson, *supra* ¶ 21, at § 16.02). The dual purpose doctrine does not provide Terveen coverage.

fulfill a task for other employment. This severable side-trip did not arise out of nor occur in the course of Terveen's employment. His deviation was not insubstantial, and he failed to resume his business trip because he did not "get back on the beam" towards his business destination. *See* Larson, *supra* ¶ 21, at § 17.03[5]. Finally, Terveen failed to meet his burden of proof showing his injury occurred out of and in the course of his employment. Accordingly, we affirm the circuit court's denial of coverage.

[¶ 25.] SEVERSON, Justice, ENG, Circuit Court Judge, and KONENKAMP, Retired Justice, concur.

[¶ 26.] GERING, Circuit Court Judge, concurs in result.

[¶ 27.] ENG, Circuit Court Judge, sitting for ZINTER, Justice, disqualified.

[¶ 28.] GERING, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

[¶ 29.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.