#29203-r-DG
**2020 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE FRATERNAL ORDER OF POLICE,
VERMILLION LODGE NO. 19,
YANKTON POLICE OFFICERS'
ASSOCIATION,                                          Appellees,

    v.

CITY OF YANKTON, SOUTH DAKOTA,          Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHERYLE GERING
Judge

\* \* \* \*

THOMAS K. WILKA
SARA E. SCHROEDER of
Hagen, Wilka & Archer, LLP
Sioux Falls, South Dakota                    Attorneys for appellees.


A. STEVENSON BOGUE of
McGrath, North, Mullin & Kratz, P.C. LLO
Omaha, Nebraska

ROSS K. DEN HERDER of
Den Herder & Hosmer Law Office
Yankton, South Dakota                        Attorneys for appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
MAY 27, 2020
OPINION FILED **09/16/20**

GILBERTSON, Chief Justice

[¶1.] The Department of Labor determined that sergeants in the Yankton Police Department are ineligible for membership in a collective bargaining unit because they have authority to hire or effectively recommend hiring decisions. The circuit court reversed that decision on appeal, determining sergeants did not have that authority. The City of Yankton appeals the circuit court's decision. We reverse.

## Facts and Procedural History

[¶2.] In November 2017, the City of Yankton (the City) filed a Request for Unit Determination with the Department of Labor (the Department) to define the membership of the collective bargaining unit requested by the Fraternal Order of Police, Vermillion Lodge No. 19, Yankton Police Officers' Association (the FOP). The FOP requested that its members include "[f]ull time members of the Yankton Police Department holding job titles of Police Sergeant, Police Corporal, Police Detective/Investigator, and Police Officers" and exclude "Chief of Police, Police Lieutenant, and all other civilian non-sworn employees." The City requested that Police Sergeants and Police Corporals also be excluded and argued that officers currently commissioned and enlisted in the South Dakota National Guard were similarly ineligible for membership.

[¶3.] Under SDCL 3-18-1(2), public employees eligible for membership in collective bargaining units do not include:

> public employees having authority in the interest of the public
> employer to hire, transfer, suspend, layoff, recall, promote,
> discharge, assign, reward, or discipline other public employees,
> or the responsibility to direct them, or to adjust their grievances,

or to effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment[.]

[¶4.] The Department held a hearing in May 2018, at which Chief of Police Brian Paulsen, Sergeant Jason Foote, Sergeant Javier Murguia, Sergeant Monty Rothenberger, and Lieutenant Michael Burgeson (all members of the Yankton Police Department) testified. Chief Paulsen testified that the Yankton Police Department (YPD) rank structure consisted of the Chief of Police, two lieutenants, four sergeants, one corporal, and multiple patrol and investigations officers at that time, but he explained that the corporal rank was being phased out. He also described the hiring process at the YPD, which consists of a written standardized test with an essay portion graded by a lieutenant, a timed obstacle course, an informal interview with one sergeant and one patrol officer, a formal interview with a panel of four sergeants and one lieutenant, and a background check.

[¶5.] The formal interview panel scores candidates based on a point system of one through five. The panel members are required to give scores no more than two points apart from each other, and if points differ by too much, they discuss how to change the scores to fit the two-point rule. The candidates are ranked by their scores, and any tie in scores is broken by the candidate with the better obstacle course time. The ranked list then goes to the Chief of Police, whose practice is to go down the list making conditional offers of employment, although Chief Paulsen was unaware of any city policy dictating that the Chief must follow the list. The employment offers are conditioned upon the passage of a background check.

[¶6.] Chief Paulsen also testified to the powers given to sergeants. Sergeants are involved in transferring employees from patrol to investigations, scheduling shifts, and assigning squads, though a lieutenant or the Chief of Police has final approval. Sergeants do not have the power to lay off or recall a laid off employee. All members of the YPD can submit nominations for Officer of the Year, an award ultimately chosen by the previous year's winner; and all members can recommend commendations. Sergeants first complete officer evaluations. Then, the evaluations pass to lieutenants and to the Chief of Police for additional comments.

[¶7.] Chief Paulsen testified that there are times when a patrol officer is the highest-ranking officer on duty and in charge in the same way that a sergeant would be as the highest-ranking officer present. The Chief of Police and lieutenants typically work 8:00 a.m. to 5:00 p.m. Monday through Friday, so sergeants are the commanding officer approximately 128 hours per week. Lieutenant Burgeson estimated that a patrol officer is the commanding officer on duty around 15 percent of the year.

[¶8.] Sergeant Foote testified that as a sergeant there are times when he is the commanding officer on duty and that he must notify lieutenants or the Chief of Police when a serious or major incident happens. He also testified that a lieutenant could ask him to change his comments on officer evaluations, but it had never happened. Sergeant Murguia testified that he believed approximately 16 hours of every two-week period would have no sergeant on duty.

[¶9.] Sergeant Rothenberger testified about his involvement in most aspects of YPD's interview process and described the process similarly to Chief Paulsen's

description. He explained that the informal interview, which determines which candidates move on to the formal interview, involves equal input from the sergeant and patrol officer based on their gut feelings. He also testified that all sergeants schedule their squads in their own way.

[¶10.]     The parties submitted post-hearing briefs in which the FOP argued the sergeant's role under SDCL 3-18-1(2) is merely routine and/or clerical and does not require the exercise of independent judgment. The City countered that Chief Paulsen's testimony made clear that sergeants play a large part in YPD's hiring process. The Department filed its order on September 5, 2018, deciding that National Guard members and corporals are not precluded from membership in the bargaining unit, but sergeants are precluded from membership. The Department found while sergeants do not possess authority for most of the provisions of SDCL 3-18-1(2), they have authority to hire or effectively recommend hiring.

[¶11.]     The FOP appealed the Department's order, asking for review of the Department's specific findings of fact and conclusions of law regarding sergeants' authority to hire or effectively recommend hire. The City requested review of additional findings and conclusions pertaining to sergeants' authority to suspend, discipline, or effectively recommend suspension or discipline. The circuit court heard oral argument in May 2019, and after finding error in some of the Department's findings and conclusions, the court entered its own findings of fact and conclusions of law in September 2019.

[¶12.]     The circuit court affirmed the Department's determination that sergeants do not have authority to suspend and discipline or effectively recommend

suspension or discipline, but reversed the Department's determination that sergeants have authority to hire or effectively recommend hiring. The circuit court held that sergeants should be included in bargaining unit membership. The City appeals, presenting three issues, which we restate as follows:

1. Whether this Court must reject certain findings of fact and conclusions of law made by the circuit court.

2. Whether sergeants in the Yankton Police Department have authority to hire or effectively recommend hiring.

3. Whether sergeants in the Yankton Police Department have authority to suspend and discipline or effectively recommend suspension and discipline.

**Analysis and Decision**

[¶13.] SDCL 1-26-37 governs our standard of review. *Terveen v. S.D. Dep't of Transp.*, 2015 S.D. 10, ¶ 6, 861 N.W.2d 775, 778. "[W]e undertake 'the same review of the administrative tribunal's action as did the circuit court.'" *Skjonsberg v. Menard, Inc.*, 2019 S.D. 6, ¶ 10, 922 N.W.2d 784, 787 (quoting *Dakota Trailer Mfg., Inc. v. United Fire & Cas. Co.*, 2015 S.D. 55, ¶ 11, 866 N.W.2d 545, 548). Findings of fact are reviewed for clear error and questions of law are reviewed de novo. *Terveen*, 2015 S.D. 10, ¶ 6, 861 N.W.2d at 778. "Our review of the circuit court's appellate review is 'unaided by any presumption that the circuit court is correct.'" *Id.* (quoting *Brown v. Douglas Sch. Dist.*, 2002 S.D. 92, ¶ 17, 650 N.W.2d 264, 269).

*1. Whether this Court must reject certain findings of fact and conclusions of law made by the circuit court.*

[¶14.] The City takes issue with multiple findings of fact and conclusions of law made by the circuit court. The City makes an overarching statement that the circuit court's findings and conclusions seem based on the idea that discretionary

decision-making is required for sergeants to be supervisors, which the City argues is not true based on federal and National Labor Relations Board (NLRB) case law. Regardless of the accuracy or inaccuracy of the circuit court's conclusions of law, this Court conducts the same review of the Department's decision as the circuit court did, and we are not limited by any presumption that the circuit court was correct. *See Terveen*, 2015 S.D. 10, ¶ 6, 861 N.W.2d at 778. Thus, we decline to examine the propriety of the court's findings of fact and conclusions of law.

> 2.  *Whether sergeants in the Yankton Police Department have authority to hire or effectively recommend hiring.*

[¶15.]  In its appeal to the circuit court, the FOP challenged the Department's findings of fact 11 and 12 and conclusions of law 7 and 12 regarding sergeants' authority to hire or effectively recommend hiring. Those findings and conclusions state:

> 11.  Candidates who pass the informal interview then move on to the formal interview process. Each candidate is then formally interviewed by a five-person panel consisting of four sergeants and one lieutenant. Each panel member's score is weighed equally. Based on the scoring of the formal interviews, the Chief of Police selects the candidate with the highest score for hire and then conducts a background check on that candidate. In the event that the high scorer does not pass the background check, the Chief then moves on to the next highest scoring candidate.
>
> 12.  The Chief makes no independent recommendations of the interviewing committee's recommendation and relies solely on its scoring for his/her hiring decisions. The Department finds that Respondent has met its burden of showing that sergeants within the YPD possess supervisory authority with regard to hiring of officers.

***

7.	The rule as established by the NLRB is not that management must follow the recommendations of supervisors but only that they do so without further inquiry.  It is enough that the Chief relies on the recommendation of the third hiring group without independently vetting the candidates beyond performing a background check.  The sergeants' role in the hiring process makes the sergeants supervisors.

***

12.	For purposes of membership, sergeants of the Yankton Police Department are precluded from becoming a member of the proposed union.  The corporal in the YPD is not precluded from joining the union.

[¶16.]	The circuit court concluded that the Department's individual findings in finding of fact 11 were not clearly erroneous, but "when viewed as a whole, the findings set forth in Finding of Fact 11 are clearly erroneous in that Finding of Fact 11 is an incomplete description of the hiring process which must be supplemented by the findings made in the court's findings."  The court also concluded that the first sentence of finding of fact 12 was purely factual and clearly erroneous.  The court determined it should instead read as: "The Chief of Police does not interview the patrol officer applicants.  Unless eliminated by a background check, the Chief relies upon the interviewing committee's scoring for the Chief's hiring decisions."  The court concluded the last sentence of finding of fact 12 was a mixed question of law and fact to be reviewed de novo, as were conclusions of law 7 and 12.  The court determined the Department incorrectly concluded that "sergeants have authority to hire or effectively recommend hiring within the meaning of SDCL § 3-18-1(2)."

[¶17.]	The City argues the Department was correct in determining that sergeants have authority to hire or effectively recommend hiring.  The City asserts sergeants "play the most significant role in the entire hiring process[,]" and the

Chief does not independently investigate hiring recommendations made after the formal interview. The City focuses on the facts that: sergeants make up half of the informal interview team and four of the five members of the formal interview panel, Chief Paulsen has never strayed from the hierarchical list given to him in making the offers of employment, and employment is only conditional upon the passage of a background check and acceptance of the employment offer. The City emphasizes that even if sergeants do not choose which questions are asked during the formal interview, they still exercise discretion and independent judgment in taking the answers into account and scoring each applicant.

[¶18.] The FOP responds that the scoring process in the formal interview is clerical and routine, and the record is sparse on the scope of the interviews and how the background checks are conducted. The FOP considers everything that occurs in the hiring process, outside the formal interview, to be an "independent investigation" apart from the sergeants' roles, even though sergeants are present at almost every step of the process. The FOP also emphasizes that scoring in the formal interview is restrained by both strict instructions on what each score means and the rule requiring no more than a two-point difference between scores. The City counters that the process of adjusting scores to meet the two-point differential involves independent judgment in negotiating, debating, and assessing the candidates' scores.

[¶19.] Both parties rely on federal case law to support their arguments, as did the Department and the circuit court. The City cites *Stricker v. Swift Bros. Constr. Co.*, 260 N.W.2d 500 (S.D. 1977), for the proposition that this Court should

follow federal courts and NLRB decisions in interpreting SDCL 3-18-1(2), but nothing in *Stricker* requires us to do so. The federal cases cited are not controlling here, and it is unnecessary to stray outside our rules of statutory construction to resolve these issues.

[¶20.] In interpreting statutes, "we give words their plain meaning and effect, and read statutes as a whole." *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 11, 932 N.W.2d 135, 139 (quoting *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13 (quoting *State v. Myrl & Roy's Paving, Inc.*, 2004 S.D. 98, ¶ 6, 686 N.W.2d 651, 654). "When, however, 'statutory construction is required statutes must be construed according to their intent, and the intent must be determined from the statute as a whole, as well as enactments relating to the same subject.'" *Olson v. Butte Cty. Comm'n*, 2019 S.D. 13, ¶ 5, 925 N.W.2d 463, 464 (quoting *Dale v. Young*, 2015 S.D. 96, ¶ 6, 873 N.W.2d 72, 74).

[¶21.] As it pertains to hiring, SDCL 3-18-1(2) excludes employees "having authority in the interest of the public employer to hire," or "effectively recommend such action," if it is not "merely routine or clerical . . . but requires the use of independent judgment[.]" The critical inquiry is therefore whether sergeants exercise "independent judgment." Chief Paulsen testified that he believes the sergeants exercise independent judgment in making hiring recommendations which

form the basis for the hiring hierarchy. A review of all the testimony shows he is correct.

[¶22.] Much of the hiring process involves objective criteria (i.e. the standardized test, obstacle course, and background check). But the interviews provide an opportunity for sergeants to use their independent judgment to move candidates forward. The informal interviews involve an intuitive decision by a sergeant and a patrol officer to move a candidate to the formal interview stage. Then, the formal interview requires the panel members to rank the applicants through a detailed scoring process. That process requires sergeants to assess the candidates and score them from one to five, without deviating more than two points from the other panel members' scores. Chief Paulsen follows the ranked list without further investigation of his own before extending offers of employment, which are conditioned on the passage of a background check. The structure of the interview process and the lack of a subsequent independent investigation shows that a sergeant's independent judgment is preeminent in the hiring process.

[¶23.] While the federal authorities and NLRB decisions are not controlling here, some of these cases provide helpful examples of what acts fit within the terms listed in SDCL 3-18-1(2), because the National Labor Relations Act has a similar provision to our statute. *See* 29 U.S.C. § 152(11). The discussions in these cases regarding what is meant by "independent judgment" further illustrate that YPD sergeants exercise independent judgment in the hiring process or in effectively recommending hiring decisions. For example, the NLRB has stated that "an effective recommendation requires the absence of an independent investigation by

superiors and not simply that the recommendation be followed." *Your Pub. Radio Corp. Emp.*, No. 05-RC-130206, 2014 WL 3613193, at \*6 (N.L.R.B. July 7, 2014). The NLRB also states that making hiring recommendations "contemplates more than the mere screening of applications or other ministerial participation in the interview and hiring process." *J.C. Penney Corp.*, 347 N.L.R.B. 127, 129 (2006). Therefore, "an individual does not 'effectively recommend hiring' unless there was 'delegated authority to participate in the hiring process' and not merely an employer's respect for an individual's opinion on an applicant." *Your Pub. Radio*, 2014 WL 3613193, at \*8. Here, it is Chief Paulsen's practice to follow the ranked candidate list. We disagree with the circuit court's reversal of the Department's conclusion on this issue. Particularly, we disagree with the circuit court's determination that "the Chief's decision to forego an interview . . . is not sufficient to find or conclude that the actions of the sergeants establish the exercise of independent judgment in hiring or effective recommendations for hiring." Chief Paulsen does not merely take into account a sergeant's personal preference for a given candidate. Instead, his practice is to honor the sergeants' and lieutenants' recommendations on every candidate.

[¶24.]     Nevertheless, the FOP contends that because the manner in which applicants are ranked is strictly governed by a scoring rubric, a sergeant's independent judgment is absent because his or her "actions are 'dictated or controlled by detailed instructions' or 'there is only one obvious and self-evident choice.'" *Nat'l Labor Relations Bd. v. Mo. Red Quarries, Inc.*, 853 F.3d 920, 927-28 (8th Cir. 2017) (quoting *Oakwood Healthcare, Inc.*, 348 N.L.R.B. 686, 693 (2006)).

The use of a scoring rubric still requires the exercise of independent judgment if it "allow[s] for discretionary choices." *Oakwood*, 348 N.L.R.B. at 693. Therefore, the interview process described here does not result in one obvious or self-evident choice. Sergeants initially follow a gut feeling in the informal interview and exercise discretion in determining whether to move the candidate forward. Then they must use their independent judgment in deciding how to score each candidate in the formal interview and in negotiating with each other when a candidate's score must be adjusted. Sergeants are involved in almost every step of the hiring process, and contrary to the circuit court's determination, their discretionary decisions lead the Chief of Police to hire the candidates they recommend.

[¶25.] The circuit court erred in determining that the Department's relevant findings of fact were inadequate and that its conclusions of law were incorrect. The City met its burden of showing that sergeants use independent judgment to hire or effectively recommend hiring decisions under SDCL 3-18-1(2), and the Department's findings should not have been disturbed.

> 3. *Whether sergeants in the Yankton Police Department have authority to suspend and discipline or effectively recommend suspension and discipline.*

[¶26.] SDCL 3-18-1(2) provides a list of activities, any of which, warrants excluding an individual from the definition of a public employee eligible for membership in a collective bargaining unit. As discussed above, the City met its burden of showing that sergeants are not eligible for membership in a collective bargaining unit because they engage in one of the listed hiring activities in SDCL 3-18-1(2). Therefore, we forgo reviewing this additional argument.

## Conclusion

[¶27.]     The circuit court erred in disturbing the Department's findings and conclusions and determining that sergeants have no authority to hire or effectively recommend hiring decisions.  The record supports the Department's determination that YPD sergeants are ineligible for membership in the collective bargaining unit because they use independent judgment to hire or effectively recommend hiring. We therefore reverse the circuit court's decision on this point.  Because sergeants do not qualify as public employees eligible for membership in collective bargaining units, we forgo reviewing whether the sergeants have authority to suspend or discipline or effectively recommend suspension or discipline.

[¶28.]     KERN, JENSEN, SALTER, and DEVANEY, Justices, concur.